## Smith & Hoe vs. Acker.

A *mortgage of goods and chattels*, though unaccompanied by an immediate delivery and not followed by an *actual* and *continued change of possession* of the thing mortgaged, *is not void*, if it be made to appear on the part of the mortgagor that the same was made in *good faith* and *without any intent to defraud* purchasers or creditors.

*Continuance* of possession in the mortgagor affords the highest presumption of *fraudulent intent* amounting to *conclusive proof*, unless it be *rebutted* by such evidence as to make the good faith of the transaction appear affirmatively. Guilt and not innocence is presumed, and the burden of proof of that innocence is thrown wholly upon the party claiming under the mortgage.

The question of *intent* is not to be determined by the court, but must be submitted to the jury.*

*Smith* and *Hoe* brought an action of *replevin* in the New-York common pleas against *Acker*, the sheriff of the city and county of New-York, for *taking* an imperial printing press, alleged to be the property of [ *654 ] the plaintiffs, from a *printing office occupied by *Jared W. Bell*.

The press was taken by a deputy of the defendant on the 20th of January, 1838, by virtue of an execution against *Bell*. The press in question, together with other presses, printing materials and household furniture, was *mortgaged* by Bell to Smith and Hoe on the 26th of *March*, 1837, to secure the payment of $10,000. The mortgage was *filed* in the county clerk's office on the *second day* after its date. The time specified for the payment of the money was the first day of *May*, 1837 ; and it was stipulated that until default in payment Bell should *remain in possession* of the property, and in the full and free enjoyment of it. At the date of the mortgage, Bell was *bona fide* indebted to the plaintiffs in the sum of $10,000, for presses and printing materials supplied by the plaintiffs, who are manufacturers of printing presses. The property in the printing office was appraised by a third person, and valued at the sum mentioned in the mortgage ; and he testified that had it been sold at public auction under the mortgage at any time between March 1837, and January 1838, it *would not have brought over twenty per cent. of its value.* In the summer and autumn of 1837, Bell was in ill health, and a good part of the time confined to his bed, during which period the plaintiffs assisted him to carry on his business, and did so to sustain him, so that he could pay off his debts to his creditors. A book-keeper of the plaintiffs, testified that there was no reduction of the debt

---

* Senator Verplanck holds that where goods mortgaged and left in the possession of the mortgagor, are levied upon by an officer by virtue of an execution against the mortgagor after the mortgage has become forfeited, the officer is not protected by the statute authorizing the sale of the *right and title of the pledgor* of goods or chattels, especially where the levy is not declared to be solely upon the *right and title of the mortgagor* or his *interest* in the property.

He also holds that the omission to *file* a mortgage of goods or chattels, does not render the security void as to all persons ; that it is only so as to *creditors whose executions attach* between the execution of the instrument and the filing thereof, and as to *subsequent purchasers* in good faith.

owing by Bell to the plaintiffs, for the period of a year after the date of the mortgage ; that the plaintiffs did not sell out Bell, because they knew that by so doing, they would have to sustain a heavy loss, and thought that by sustaining him until the times were better, they would obtain their money, and his other creditors would stand a chance to be paid. The deputy sheriff, at the time of the levy, was told that Bell did not own the property—that it was mortgaged. The property at the time of the levy was in the possession of *Bell*. The defendant's counsel moved for a non-suit. The presiding judge decided that the mortgage being *unaccompanied by an immediate delivery, and not followed by an actual and continued change of possession* *of the property mortgaged—and no reason sufficient [ *655 ] in the law being shewn for not delivering possession, it was *fraudulent*, and that the plaintiffs were not entitled to recover. The counsel for the plaintiffs insisted, that the question of *fraudulent intent* should be submitted as a *question of fact to the jury ;* which the judge refused to do, and on the contrary, ordered a *non-suit*, and judgment was accordingly entered, which was subsequently *affirmed* by the supreme court. The plaintiffs thereupon sued out a writ of error, removing the record into this court. The case here was submitted on written arguments, by

*Willis Hall*, (Attorney General,) for the plaintiffs in error.

*R. Mott*, for defendant in error.

After advisement, opinions were delivered :

By the CHANCELLOR. (The chancellor was of opinion, that *under the circumstances of this case*, the judgment of the supreme court ought to be *affirmed*. The reporter regrets that he has not been able to obtain a copy of the opinion for publication.)

By Senator EDWARDS. It appears to me this case is a proper one for this court to give a construction to the statute relative to mortgages of personal property. The 5th section, 2 *R. S.* 136, declares, that " Every sale made by a vendor of goods and chattels in his possession or under his control, and every assignment of goods and chattels, by way of mortgage or security, or upon any condition whatever, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold, mortgaged or assigned, shall be presumed to be fraudulent and void, as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchasers in good faith ; and shall be conclusive evidence of fraud, unless it shall be made to appear, on the part of the persons claiming under such sale *or assignment, that the same was made in good faith, and [ *656 ] without any intent to defraud such creditors or purchasers."

If this statute had declared that without a delivery and continued change of possession, the sale should be held fraudulent and void, and there have

stopped, I grant the question of fraud would have been one purely of law for the court, and not for the jury ; for, under a given state of facts, the law would pronounce the fraud ; but the statute, after declaring it conclusive evidence of fraud, adds, unless it shall be made to appear, on the part of the person claiming under such sale or assignment, that the same is made in good faith, and without any intent to defraud such creditors or purchasers.    Is not, therefore, the inference irresistible, that if the person claiming under such sale or assignment, shows that the same was made in good faith, and without any intent to defraud such creditors or purchasers, that the evidence of fraud is done away, and that under such circumstances, although there be no delivery and continued change of possession, the court cannot pronounce the transaction fraudulent ?    Taking the whole section then together, if I am correct in the construction I have given it, we must infer the law from it to be, that although the delivery of the property is not made, and although there is no continued change of possession, the transaction is not fraudulent, if the person claiming under the sale or mortgage shall make it appear that the same was made in good faith, and without any intent to defraud such creditors or purchasers.    The law therefore is substantially the same as it was before the adoption of this section, except the want of delivery of the property and continued change of possession is deemed evidence of fraud, unless the *bona fides* of the transaction is shown by the party claiming under the sale or mortgage ; before, it was held as only *prima facie* evidence of fraud.

In the case of *Barrow* v. *Panton*, 5 *Johns. R.* 258, it was held that possession continuing in the vendor was only *prima facie* evidence of fraud, and might be explained.    In the case of *Beals* v. *Guernsey*, 8 *Johns. R.* 452, the court say that the question of fraud must depend upon the motive ; *the purchase must be *bona fide*, as well as upon a good consideration.    The non-delivery of goods at the time of sale, is of itself a circumstance of fraud, as was stated in *Twyne's case*, 3 *Co.* 80, *b*, but it is only *prima facie* evidence of fraud, and the circumstance may readily admit of explanation ; and in the case of *Codigan* v. *Kenett, Cowp.* 435, it was said the question in every case is, whether the act done is a *bona fide* transaction, or whether it is a trick and contrivance to defeat creditors ; and in *Bissel* v. *Hopkins*, 3 *Cowen*, 188, Ch. J. Savage says : " The possession by the vendor of personal chattels after sale is not conclusive evidence of fraud." What was before the statute therefore held *prima facie*, is now by the statute declared to be conclusive evidence of fraud.    But in effect, practically, it is no more, than what it was before the statute *prima facie* evidence.    For the statute allows it to be repelled by adverse testimony, and to be entirely done away, so as to avoid its effect in constituting fraud in law ; and the principal alteration in the law by adopting the section in question appears to be, to cast the burden of destroying the presumption of fraud, arising from the want of change

in the possession of the property, on the vendee or mortgagee, and such is the construction given to this section by Chancellor Kent. He says: " The doctrine now established by the statute is evidently as high toned as any that the courts of justice in this country can, by a permanent practice, sustain ; and it contains this inherent and redeeming energy, that the fact of withholding possession raises the presumption of fraud, and the burden of destroying that presumption is thrown on the vendee or mortgagee. 2 *Kent's Comm.* 529, n. a. In order to evade the inference of fraud, which the statute throws upon the transaction, where there is no delivery of the possession, the party claiming under the mortgage is to show that it was made in good faith, and without any intent to defraud such creditors or purchasers ; he is therefore to show with what intent it was made ; and this statute has expressly declared that the question of fraudulent intent in all cases arising under it is a question of fact, and not of law. 2 *R. S.* 72, § 4. Under this section of the statute, Ch. J. *Nel-* [ *658 ] *son* held, in the case of *Doane* v. *Eddy*, that the fraudulent intent was a question of fact, and should have been submitted to the jury; and in the case of *Cunningham* v. *Freeborn*, 11 *Wendell*, 251, he says : " The question of fraudulent intent is undoubtedly made by statute a question of fact ; and when before a tribunal in which questions of fact are to be tried by jury, must be submitted to them." In the case under review, the plaintiffs called witnesses for the purpose of showing that the mortgage was made in good faith, and without any intent to defraud the creditors of Bell ; and having produced testimony explanatory of the transaction, the question whether there was a fraudulent intent or not was a question of fact for the jury, and should have been submitted to them. If we admit the judge to decide upon the question of fraudulent intent, we concede to him the right to defeat the object the legislature had in view in passing the law, which was to prevent judges and courts from treating questions of fraud purely as questions of law, and to restore the law which considered and treated them as mixed questions of law and fact. I am therefore of opinion that the judge erred in assuming to himself the right of determining this question and nonsuiting the plaintiff. But although this is a question of fact to be submitted to the jury, I do not consider their verdict is final and conclusive under all circumstances ; should it be contrary to law or evidence, I suppose the court has the same control over their verdict in these as in other cases. In *Stoddard* v. *Butler*, 20 *Wendell*, 507, I was for affirming the judgment of the supreme court ; but it was not on the ground that the immediate delivery of the property did not accompany the assignment. In that case, I considered there was fraud in fact, inasmuch as the assignment was for a far greater amount than the debt, and no provisions were made in it to pay over the surplus ; and such impressions, I believe, influenced several other members of the court. The question as to the delivery of the property was not in that case the proper test.

Albany, December, 1840.—Smith v. Acker.

The act of 1833, requiring a mortgage of goods and chattels [ *659 ] to be filed, does not repeal the statute concerning *fraudulent sales and conveyances, nor was it so intended by the legislature. Its design was to compel the party to file his mortgage; and in case of neglect, to declare it void as a penalty. The construction given to this act in the case of *Wood* v. *Lowry,* 17 *Wendell,* 492, is the correct one, and carries out the design the legislature had in view in passing the act. But I am for reversing this judgment, on the ground that the judge assumed to decide upon the matters of fact, which belonged to the jury, and nonsuited the plaintiff. I am therefore for reversing the judgments in the courts below.

By Senator HOPKINS. This case presents the important question, arising under the revised statutes relative to sales and mortgages of personal property, unaccompanied by change of possession, whether evidence of the good faith and intent of the parties shall on the trial be submitted to the jury. I perceive no peculiar circumstances or reasons that might not be urged in almost any case, free from fraud, to make this an exception to a general rule on the subject. The case also presents the question whether the filing of a chattel mortgage rebuts the presumption of fraud arising from non-delivery of the property. These appear to be the only questions raised or decided in the court below or presented in the points and arguments submitted in this court. As my vote will directly conflict with the whole course of decisions of the supreme court upon the principal question, I feel it proper to assign my reasons somewhat at length.

The revised statutes, *vol.* 2*d, p.* 70, § 5, 2*d ed.* provide that sales, mortgages and assignments of goods and chattels, " unless the same be accompanied by immediate delivery and be followed by an actual and continued change of possession of the things sold, mortgaged or assigned, shall be *presumed* to be fraudulent and void as against creditors or subsequent purchasers in good faith ; and shall be *conclusive* evidence of fraud, *unless it shall be made to appear* on the part of the persons claiming under such sale or assignment, that the same was made in good faith and without any intent to defraud such creditors or purchasers."

[ *660 ] *In the same chapter *p.* 72 § 4, it is provided that " the question of fraudulent intent, in all cases arising under this chapter, shall be deemed a question of fact and not of law." *Sec.* 9, *p.* 71, provides that a mortgage of goods or chattels, not accompanied by change of possession, shall be *absolutely* void as against creditors and subsequent purchasers, unless the mortgage or a copy be filed as mentioned in another section.

To a mind not embarrassed by the decisions, conflicting opinions and subtleties, with which legal talent has already encumbered our reports, the question would seem a very simple one ; to settle which we hardly need look

beyond the very plain letter of the statute upon the subject. It seems unnecessary to look into the previous state of the law even to ascertain the mischief for which the statute is intended to furnish a remedy. To my mind it is evident upon the face of the statute itself, that the object was to provide a remedy against actual fraud in transactions, which if conducted in good faith and without any fraudulent intent, are to be upheld as legal, and to facilitate the detection of fraud when it does exist by throwing the *onus probandi* upon the persons claiming under such sale or mortgage, and requiring them to prove not only that the transaction was in good faith, for good and valuable consideration, but also such circumstances of publicity, reasonableness as to amount, time, value and quantity of property, difficulty or inconvenience of removal, advantages of allowing it to remain, or other circumstances agreeable with the ordinary course of business and fair dealing, as shall rebut the presumption of fraud and satisfy the jury that there was not any intent to defraud, hinder or delay creditors.

The supreme court, however, has taken a widely different view of the question and seems to consider the purpose of the statute to be, not to provide a remedy against actual fraud by throwing the burden of proof on the party charged with it, but to do away the possibility of fraud by declaring such transactions absolutely void in all cases where change of possession is practicable, however free from fraud the case may be, or however beneficial it may be to the parties, *and even though it might [ *661 ] evidently be designed to promote the interests of the creditors generally by enabling the vendor or mortgagor, by use of the property, to pay his debts.

In *Beekman* v. *Bond*, 19 *Wendell*, 444, Justice Bronson, says : " The fifth section, title second, declares in substance, that as against creditors and purchasers, every sale and conveyance of goods without change of possession, shall be presumed to be fraudulent and void. The question of fact here is about the possession. The provision is *not* that a conveyance made with a *fraudulent intent* shall be void, but that a conveyance of goods without a change of possession *shall be void*."

Is the purport of the statute well inferred here ? Is it not rather perverted, or at least the material clause or provision which would make the conveyance only conditionally void, kept out of view or denied ? One would suppose that not a word is contained in the statute about fraudulent intent. True, it is added, " This is the language of the statute, *and except under special circumstances, a jury has nothing to do with the case.*" What, then, are the special circumstances with which a jury has something to do ? The statute says, the good faith and the intent of the parties. The opinions of the supreme court say, only such circumstances as show that change of possession is impracticable. " That there must in all cases, where practicable, be a change of possession." " The only question of fact, is about the pos-

session." "The explanation must relate to the possession." Whereas, the only provision in the statute in relation to possession is, that it being unchanged, fraud "shall *be presumed*," making it a matter of *legal presumption*, "and shall be *conclusive*; that is, admitting of no explanation, "unless it shall be made to appear that the same was made in good faith and without any intent to defraud ;" which question of fraudulent intent is, by a subsequent section, expressly made a question of fact, and not of law. The use of the term "conclusive" would seem to preclude any explanation, unless connected with evidence of good faith and intent. By the statute, the possession being unchanged, creates a *presumption* of fraud, [ *662 ] which shall be *conclusive* unless rebutted by evidence of good faith. But the court decides that it is conclusive unless shown to be impracticable, and that evidence of the change of possession being impracticable is the only evidence of good faith required by the statute. If so, then the statute does not embrace cases of actual fraud ; or if it does, the burden of proof of fraud still rests with the creditor who seeks to avoid the sale or mortgage ; and in all cases where the possession cannot be changed, as soon as that fact is shown, the case is taken out of the statute ; for instance, in the case of a mortgage of growing crops, which is of common occurrence in the country, the only evidence necessary to sustain the transaction would be to show a mortgage, valid on its face, and that the property could not be moved ; and without showing any indebtedness or consideration, for that does not "relate to possession," and without in any other way rebutting the presumption of fraud, the party would be entitled to a verdict, unless the creditor should be so fortunate as to be able to prove a negative, as that there was no consideration, or otherwise disclose some fraud in a transaction to which he was a stranger—difficulties from which the legislature no doubt intended to relieve him in all cases when the possession remains unchanged. Under the construction of the supreme court, the provisions of the statute become inconsistent ; and yet from this very fact the court would seem to draw an inference favorable to that construction. In the case of *Beekman* v. *Bond*, Justice Bronson remarks : "To my mind it is quite clear that the legislature did not intend, on one page of the statute book, to declare as matter of law that a particular transaction should be presumed fraudulent, and on the next that the fraud should be a question of fact, and not of law." The error here, as in the other cases, arises from keeping out of view that part of the statute which permits the legal presumption of fraud to be rebutted by evidence of good faith, presenting a question of *intent*, which the subsequent provision declares shall be a question of fact, and which renders the two provisions perfectly consistent, while under the construction of the supreme court they cannot in any way be reconciled. [ *663 ]     *There seems to be a labored effort to make the provisions of the statute conform to the construction which the court

chooses to give it ; and the ground of all the errors of the decisions on this subject would seem to be the desire of the court to establish a code of morals which shall put it out of the power of persons to commit fraud, rather than to carry out the intention of the legislature to provide means of detecting fraud when committed. In *Randall* v. *Cook*, 17 Wen. *dell*, 56, Justice Bronson says : " The transaction is fraudulent in law ; the sentence is written in the statute book, and neither courts nor juries are at liberty to disobey the mandate. Whatever opinion may be entertained by others, I think this a most *salutary doctrine*. Had it been declared fifty years ago, that if a man convey his personal chattels and still kept them himself under any pretence, the transaction should be deemed absolutely fraudulent and void as against creditors and purchasers, it would have saved an incalculable amount of time and money, and would moreover have rendered an important service to the cause of *good morals*." He continues : " Although our statute does not go quite so far as the rule I have suggested, it is nevertheless broad enough to admonish," &c. The last remark of the learned judge appears to me perfectly correct. The statute most certainly does not go so far as the rule suggested ; but at the same time the decision of the court in this very case does extend the statute to precisely such a meaning in all cases where change of possession is practicable—and in cases where it is impracticable, it of course could not be required.

Although I respect the motives which dictated the decisions of the supreme court on this question, I can neither agree with the judges in their construction of the law, nor wholly assent to the reasons of policy and morality upon which they ground that construction. The same reasoning would be applicable to almost all the business transactions of life. If every thing capable of being perverted, in the hands of the dishonest to fraudulent purposes, is to be done away, the honest portions of the community will have little left of all that they deem most valuable.

*The reasoning, as to general policy, would be equally applica- [ *664 ] ble to all sales upon credit, as also to bailments and trusts. Had all credits been prohibited fifty years ago, it no doubt would, in the language of Justice Bronson, have saved an incalculable amount of time and money. The same objections might be urged against leases or lettings, and even ordinary lendings from neighbor to neighbor. One should not lend his horse to his neighbor even to go for a physician, because it would put it in his power to commit a fraud. Nor should the keeper of a livery stable let a horse for hire, upon the same principle. The merchant must not sell goods to another on credit. One must not sell a yoke of oxen to a farmer to carry on his farm without payment, however honest and deserving he may be, lest somebody else, supposing the farmer to be really worth a pair of oxen, should also trust him for a cow.

The court seems desirous of establishing a rule that shall do away the pos-

sibility of fraud. This is evidently going beyond the object of the statute. Does not the statute provide a reasonable guard against frauds in these transactions, by requiring the party, upon a mere presumption of fraud to prove himself innocent. To extend the rule beyond that, might be oppressive and deprive many of a privilege they may deem valuable—for if there is no fraud in the transaction—if in case of a sale the vendor really receives full pay for his property—if the mechanic mortgage his tools for necessaries for his family, or means to carry on his business, is he any the less able to pay his debts or support his family by being left in possession and use of the property ? Is he not in fact better able to do both.

At all events, if it is desirable to establish a more rigid rule—if credits and confidence among our citizens are to be discouraged and done away with, because they sometimes put it in the power of the dishonest to commit fraud, it appears to me to be a matter for legislative rather than judicial correction. But is it certain that a less rigid rule than the supreme court seeks to establish, might not rather tend to prevent frauds and undue credits ? Would not men look more to their securities—at least would they not be [* 665 ] more *inquisitive as to the character of those with whom they deal and be less likely to trust those who would be unworthy of credit, and consequently withhold from the dishonest the very means of fraud ?

The construction which the supreme court gives to the statute, not unfrequently works injustice. They admit that it sometimes operates not only with inconvenience, but security and hardship. The honest and confiding citizen may pay out his last dollar in the purchase of a barrel of flour or any other article of necessity, and if he fails for a single day, under any circumstances to remove it, and an execution is levied on it, he must be the loser, however consistent with ordinary fair dealing his conduct may have been, or however little able he may be to sustain the loss.

Nor do I perceive the danger or objections suggested as to leaving the trial of these questions of fraudulent intent to juries. Can they not be entrusted with that power in these cases as well as in all other cases of fraud and even in criminal cases ? Indeed are not the juries the proper tribunals to settle the balance of conflicting evidence ? The statute does not take from the court the right to decide upon the competency, admissibility and relevancy of the testimony that may be offered. Proper and pertinent evidence only would be permitted to go to the jury. When the party required to show good faith offers evidence of his debt or the consideration of sale, the court decide upon the relevancy of the testimony for that purpose. If the creditor offers to prove that the party claiming under the sale or mortgage knew that the vendor or mortgagor was deeply in debt and that executions were about to be issued against his property—or that the consideration was not a full one—or that the mortgage covered an unreasonable amount of property and was calculated to hinder, delay or prevent creditors from

redeeming or seeking a remedy against it, the court would decide upon the relevancy of the evidence; but when proper and pertinent evidence to show the intent of the parties has been submitted to the jury, they decide according to its convictions upon their minds. I see *no [ *666 ] danger or difficulty therefore in submitting the question of intent in these cases to a jury.

As to the question arising under the 9th section of the statute requiring chattel mortgages, when the possession is unchanged to be filed—I think that such filing does not of itself rebut the presumption of fraud arising from non-delivery of the property, but still leaves the burden of proof of the *bona fides* of the transaction with the party claiming under the mortgage—and in addition to such proof he is required to show that the mortgage or a copy has been filed. This provision relative to filing, passed subsequently, does not repeal the former provision changing the *onus probandi*, but creates an additional safeguard; and I think affords further evidence that the legislature did not intend wholly to do away with such mortgages, when made in good faith, but to provide all reasonable protection against frauds undertaken to be covered by them. In this view the two provisions are perfectly consistent with each other.

In this case the plaintiffs in an action of *replevin* to recover a printing press and other property levied on under an execution by the sheriff of New-York, proved their mortgage, admitted to be regularly filed, also their debt contracted for part of the property mortgaged—the value of the property —that it could not at the time be sold but at a sacrifice—that the mortgagor was a printer and required the use of the press in his business—and that its removal would lessen his ability to pay his debts.

I think the judge erred in refusing to submit the testimony to the jury—and that the judgment of the supreme court, affirming the decision of the court below, should be reversed and a *venire de novo* ordered.

By Senator VERPLANCK. There was but a single question presented to us in the argument of this case, or raised at the trial, or considered in either of the courts below through which the cause has passed. This is the very important and interesting question as to the legal presumption of fraud in sales, assignments and mortgages unaccompanied by change of possession, and the evidence on which *that presumption may be re- [ *667 ] butted, and the validity and good faith of the transaction established. But the chancellor has unexpectedly placed the decision of the case upon different grounds, neither of which were ever considered or decided in the courts below. As, however, these reasons are maintained to arise upon matters " found in the record" according to the words of the statute, regulating our appellate power, I will not deny that this court may be authorized to consider them. Let us then briefly examine these points.

I. A printing press and printing materials, with other moveables, having

been mortgaged by the owner, *Bell*, to the plaintiffs, is levied upon by the sheriff of New-York, *Acker*, on an execution against *Bell*. The chancellor holds, that in an action of *replevin* for the goods, brought by the mortgagees against the sheriff, the nonsuit directed by the judge, because that, " by the law of the land, the mortgage being unaccompanied by possession, or a reason sufficient in the law for not taking possession," should be sustained, (even if the causes so assigned were erroneous,) because that on the plaintiffs' own showing, allowing the mortgage to be valid, the sheriff had still a right to levy and sell under the following provision of the statute—" When goods or chattels shall be pledged for the payment of money, or the performance of any agreement, the right and interest of the person pledging may be sold on execution against him ; and the purchaser shall acquire all the right and interest of the defendant, and shall be entitled to the possession of such goods and chattels on complying with the terms and conditions of the pledge." 2 *R. S.* 366, § 20. It is therefore inferred that the sheriff had the right to levy on the mortgaged goods, and if he could not sell the unincumbered title, yet he might sell Bell's *interest* in them, which was an equity of redemption ; and that this right would authorize a nonsuit, whether the reasons assigned by the judge did so or not.

Now, in the first place, it must be observed that this is not the case of *goods pledged*, in which a legal interest of the pledgor still exists ; but it is one of a chattel mortgage forfeited some time before by non-payment of the debt. A \*mortgage of personal property is a conveyance of the owner's title upon condition, and the conveyance becomes an absolute interest at law if not redeemed by a given time. Such is the definition of Chancellor Kent, 4 *Kent's Comm.* 138, and so it has been repeatedly decided in our supreme court. Thus, *per curiam :* " A mortgage of goods is a pledge, and more : it is an absolute pledge, to become an absolute interest if not redeemed at the specified time. After the condition forfeited, the mortgagee has an absolute interest in the thing mortgaged ; whereas a pawnee has but a special property in the goods, to detain them for his security." *Brown* v. *Bement,* 8 *Johns. R.* 96. It would therefore seem that there was no legal " right or interest" of Bell in the goods that could be subject to execution. But this is a point not necessary for the decision of this cause, since the consideration of the legal right to sell such equitable or residuary interest (if there was one) is positively excluded by the facts shown on the record. The sheriff did not claim to sell the remaining *right and interest* of Bell. He levied upon and asserted the authority to sell the goods themselves as Bell's property. The notice accompanying the plea must set forth, according to the statute regulating proceedings in replevin, " the matters which, if properly pleaded, would be a bar to the action, and which, if the goods have been replevied, would entitle him (the defendant) to a return thereof, and which he might give in evidence at the trial

[ \*668 ]

in the same manner and with the like effect as if the same had been so pleaded." 2 *R. S.* 529. Here the notice was that the defendant would on the trial give in evidence, " that by virtue of a certain execution, he had levied upon the printing press and property replevied by the plaintiffs ;" and would " show that the said printing press and property were the property of the said Bell." This is an unqualified claim of absolute property, not of a residuary right or equitable interest, which it was purposed to sell under execution. Under this notice, it would have been an unjustifiable surprize upon the plaintiffs, had the sheriff been permitted to prove a right or interest in the goods different from that of which he gave notice. [ *669 ] Thus, the very purpose and object of a notice would be defeated.

Had the notice stated that the defendant would show that either Bell owned the goods, or had some right or interest in them subject to execution, then the question raised by the chancellor would have been presented on the record. As it stands, it shows only a claim of right to sell the goods themselves. If the sheriff had any right at all to levy upon and sell the right and interest of the mortgagor in goods, of which the absolute legal title had passed to the mortgagee who had the right to reduce them to immediate possession, still here that right was waived by not so giving notice, and by setting up instead the claim to sell the goods themselves.

Nor is this a mere technical inference or distinction ; on the contrary, the evidence at the trial, the ruling of the judge there, the fact that the defendant elected to take judgment for the " value of the goods replevied," and that their full value was so assessed ; the decision of the supreme court as well as the whole argument of counsel on both sides, all concur to show that the unqualified right to sell the goods without respect to the mortgage, was asserted by the sheriff, (or those who indemnified him,) whilst the sole object of the replevin was to preserve the mortgage interest itself, not to protect Bell's possession. This reason, therefore, for sustaining the nonsuit, does not and cannot arise upon any thing in the record before us.

I had come to this conclusion upon the evident reason of the matter, without being at all aware that there was any authority bearing directly upon the point. But a learned friend has since pointed out to me a case in our own reports, involving, and substantially deciding this very question. In *Wheeler* v. *McFarland*, 10 *Wendell*, 320, it was held, that when a sheriff levied upon a quantity of boards, after notice of a prior lien, and advertised the whole property for sale, and not merely the defendant's right or interest ; or, (as Chief Justice Savage said,) " not to be sold subject to the plaintiff's claim, but in defiance of it ;" there the plaintiff, who was entitled to the lien, might replevy, *and the sheriff's author- [ *670 ] ity to sell the residuary interest was no justification.

II. A previous difficulty in the plaintiff's mortgage, independent of its alleged invalidity by reason of constructive fraud, has been suggested as

being also sufficient cause of nonsuit. This, though again, a point neither taken at the trial nor before any of the courts which have had cognizance of this cause, undeniably appears on the record. The mortgage was not filed in the register's office, as required by law, until, *two days after the date* of its execution ; and it is argued that the mortgage is consequently void.

I do not so understand the statute of 1833, requiring the filing of personal mortgages. That law provides thus : " Every mortgage of goods or chattels not accompanied by an immediate delivery, and followed by an actual and continual change of possession, shall be absolutely void as against the creditors of the mortgagor and subsequent purchasers in good faith, unless the mortgage or a copy thereof shall be filed, &c." 2 *R. S.* 136, 2d ed. This statute does not declare that the mortgage is void if not *immediately* filed ; it merely makes it void against creditors and subsequent purchasers, unless it is filed. Otherwise, the mortgage is valid, and so it has been expressly held. " The omission to file, makes a security void ; but it is only so against judgment creditors and subsequent purchasers in good faith." *Seymour* v. *Lewis,* 19 *Wendell,* 515.

Until it is filed, it is valid only between the parties and against those who have actual notice ; and if the execution of a judgment creditor had attached in the interim, however short, between the execution and the filing, that subsequent filing would unquestionably be so far inoperative. But as to all others, it must be valid, just as actual notice makes the mortgage valid as to subsequent purchasers. If such an interval of two days can vitiate a mortgage, then a single one must also do so. When we consider the great hardship of such a rule, and the frequency of accidents by which such a brief delay might occur, especially in many large country towns where the clerk's office may be several miles of bad road distant from the [ *671 ] *parties, we cannot reasonably give this harsh and inconvenient construction to the act, unless such an intention had been declared in express words. Such express words I cannot perceive in the statute. There may certainly be cases where the rights of others become perfect and bind the goods after the execution of the mortgage and before the filing. Such is not the case here. There may also be cases where the length of the interval may, like other circumstances, indicate a collusive plan of keeping back a secret mortgage till its filing became necessary to defeat the creditors. Such facts might be good evidence of actual fraudulent intent. Otherwise, I think it is clear that the filing of a chattel mortgage has much the same legal effect as the recording of conveyances of real estate. The duly executed personal mortgage, and the executed deed, are both good as between the parties, even before the filing of the one and the recording of the other. They are both void as against others, whose rights then attach. But when filed and recorded, both instruments become valid and effective against all men, ex-

cept those whose rights have thus previously attached. The language of the two acts as to conveyances of real and personal property, are very similar, and the principles the same. To pronounce a chattel mortgage void because not immediately filed, would, it seems to me, lead to the same unprecedented and dangerous conclusion as to deeds and mortgages of real estate not recorded on the very day of their execution.

Regarding, therefore, these objections to the plaintiff's right of action as wholly untenable I proceed to consider the main and more important point in the case upon which alone the supreme court has given a decision.

III. This is the long vexed question so frequently agitated in all our courts, and so constantly arising in the business of life ; " When and upon what grounds may sales, assignments, and mortgages of goods and chattels, unaccompanied by possession, be maintained as valid against the legal presumption of fraud ?"

Mortgages of personal property rest on the same ground in this respect as sales and other assignments or conveyances *of such    [ *672 ] property, except that the act of 1833 has provided as to mortgages an express official guard against fraud or collusion by requiring the instrument, or a copy thereof, to be filed. In the language of the chief justice, " the act requiring such mortgages to be filed in a public office, does not repeal the statute concerning fraudulent conveyances ; its only effect is to add another to the grounds which previous to that act might avoid that instrument." *Wood* v. *Levy*, 17 *Wendell*, 492.

I have on a former occasion, in this court, *Stoddard* v. *Butler*, 20 *Wendell*, 547, given my general views of the history, policy, and right interpretation of the law on the subject of fraudulent or constructively fraudulent conveyances of moveables. In that case this court was equally divided, and consequently the decree of the court below was affirmed so far as affected the rights of the parties in that particular suit, leaving the law of the case still undetermined. So far as that case may be considered as any authority at all, it is in support of the doctrine then, maintained by Senator Dickinson and myself, in opposition to that of the judges ; for one of the members of this court (Senator TALMADGE) who had voted against us, took occasion on a subsequent motion for rehearing, (which was denied) to express his concurrence with our general construction of the law, and placed his vote for affirmance upon the peculiar circumstances of the case.

In the opinion then delivered by me, I referred to the history of the law of constructive or presumptive fraud in sales and mortgages. That history from the time of the statute of Elizabeth, and the decision in *Twyne's case*, 3 *Coke's R.* 80, down to the period of the revision of our statutes, is the record of a perpetual struggle between a general rule of public policy intended to cut off the possibility of collusive sales and mortgages, by prescribing either legislatively or judicially, that every transfer of personal prop-

erty, not accompanied by change of possession, should be held fraudulent in the eye of the law and void against other parties; and on the [ *673 ] other hand, the constantly occurring hardships and manifest *injustice of numerous particular cases, where the innocent and even praiseworthy intention of the party was obvious, so that the legal inference of fraud appeared inequitable, oppressive, contrary to the truth of the case, and repugnant to the moral feelings of courts and juries. The result, both here and in England was, that whilst the courts and the books laid down the rule broadly, and often applied it strictly, yet case after case and then class after class of exceptions was exempted, whilst the presumption was allowed to be explained or refuted by the nature of the sale, by purchase under execution or distress for rent, by necessity, convenience, custom of trade, situation of place, motives of humanity or friendship, the relation of the parties, and numerous other special circumstances more or less accurately defined. *See cases collected in* 3 *Cowen's R.* 190, *note.*

Finally the courts seemed to settle down upon the rule that though continuance of possession in the vendor or mortgagor be always a *prima facie* badge of fraud or collusion, yet such presumption is open to be explained by evidence shewing the transaction to have been honest and giving some probable defence or excuse for retaining possession. *Woodman* v. *Baldah,* 8 *Taunt. R.* 676. *Joseph* v. *Bryan, id.* 838. *Eastwood* v. *Brown,* 1 *R. & N.* 312.

Our revisers in 1829 preferred the older and stricter rule of policy, holding that creditors were to be protected, and collusive sales and mortgages prevented at any hazard, even at the expense of some hardship, occasional injustice and frequent commercial inconvenience. They accordingly prepared and recommended a re-enactment of the old statute of frauds so varied as to embody the spirit and even the language of the stricter English decisions, and especially that of the opinion pronounced by Judge Buller in *Edwards* v. *Harben,* 2 *T. R.* 587, in which he said that " the court had consulted all the judges, who were unanimously of opinion that unless possession accompanies and follows the deed it is fraudulent and void." The revisers' proposed law declared every sale and assignment by way of mortgage void as against creditors and subsequent purchasers unless accompanied [ *674 ] by immediate delivery and followed by an actual *and continued change of possession. *Revisers' Report,* 3 *R. S.* 657, 2*d. ed.* The legislature adopted the reported section with slight verbal alterations, and then added to it the remarkable exception, that such absence of change of possession should be conclusive evidence of fraud " unless it shall be made to appear on the part of the persons claiming under such sale or assignment, that the same was made in good faith and without any intent to defraud such creditors or purchasers." In a subsequent part of the same chapter it was enacted that " the question of fraudulent intent, in all cases arising under

this chapter, shall be deemed a question of fact and not of law." To these provisions the act of 1833 added the requirement of filing personal mortgages in certain public offices. Taking the words as they stand in their usual and ordinary, as well as their legal sense, independently of authority and external evidence of the legislative intent, what is the obvious meaning of these provisions ? They certainly mean in the first place, " that mere absence of any direct evidence of intent to defraud," even in connexion with a valuable consideration appearing on the face of the mortgage or bill of sale, " will not be sufficient to take the case out of the statute."

But agreeing thus far with the supreme court in their construction of the statutes, I cannot allow that " the only reason for want of removal which the law will approve" arises from the physical impossibility or extreme difficulty of removal, as " when time may be necessary for removing ponderous articles, growing crops, or the like ; but that when the property is of such a nature that there may be an immediate change of possession, that change must be made or the law will pronounce that possession fraudulent." When this possession is not changed, the supreme court holds that " courts and juries are not to speculate upon the probabilities of good faith in a given case ; the transaction is fraudulent in law. The sentence, say they, is written in the statute book, and neither courts nor juries are at liberty to disobey the mandate." *Randall* v. *Cook*, 19 *Wendell's* *R. 55. [ *675 ] *Duane* v. *Eddy*, 16 id. 529. *Gardner* v. *Adam*, 12 id. 297.

In my judgment, such is not the sentence of the law nor the mandate of the statute, unless indeed this important section can be read as originally introduced, omitting the words " unless it shall be made to appear that the same was made in good faith," &c. If these words have any meaning, use or efficacy, and if the subsequent provision that " the question of fraudulent intent shall be deemed one of fact and not of law," means, as its words naturally import, that, the question whether or no it can be made to appear " that the transaction was in good faith," is one of fact for the decision of the jury, and is not left as an absolute inference of law, then it seems to me clear, that juries are authorized and even bound " to speculate upon the probabilities of good faith," whenever evidence is presented, calculated to show affirmatively the good faith of any transaction, otherwise subject to the legal presumption of constructive or actual fraud. The enactment of the revised statutes, according to my understanding of the words in their plain and obvious sense, is this : continuance of possession in the vendor or mortgagor, is not merely one of the marks of fraud to go to a jury to decide upon, under all the circumstances of the case, but it affords the highest presumption of such fraudulent intent, amounting to conclusive proof, unless it be rebutted by such positive evidence as to make the good faith of the transaction appear affirmatively. Guilt and not innocence is presumed ; and the burden of proof is thrown wholly upon the party claiming under the sale or mortgage.

This interpretation of the statute agrees with the literal meaning of its language, and is confirmed by comparing it with the history of the law, as well judicial as legislative. This shows that the framers of the statute had in view the tenor and the very words of former decisions; for after adopting the principle of making a continuance of possession the highest presumptive proof of fraud, and providing, almost in the language of Judge Buller and his brethren, in *Edwards* v. *Harben*, that conveyances of [ *676 ] chattels *should be held fraudulent and void, unless possession accompanies and follows the deed, the legislature added an excepting clause, in the spirit and language of other milder decisions, such as that of Lord Mansfield, in *Cadogan* v. *Rennel*, *Cowper*, 435, where he said " the question in every case is, whether the act done is a *bona fide* transaction, or whether it is a trick and contrivance to defeat creditors."

The revising legislature has therefore deliberately adopted and enacted both the conflicting rules of adjudication. They have taken the stricter rule of suspicion and policy as the general one, and as affording the presumption of constructive guilt, without any proof; but at the same time they have allowed the other rule as the exception, whenever the evidence of honest and fair intention can be affirmatively made out.

Nor is there any thing in the consideration of the policy of the statute, to contradict the natural interpretation of its language thus supported by the external evidence of its history. I have more than once maintained in this court, the dangerous tendency of assuming to interpret statutes, from the supposed policy of the legislature, so as to give them a forced construction in conformity with such presumed legislative intent, and in contradiction to language, in itself clear, unambiguous and explicit. Yet if we were at liberty to consider the subject, not as a question of legal interpretation, but simply as one of important public policy, I could not conceive any rule that could be established to govern the concerns of a busy and commercial people in this respect, more wise or more equitable than that which I regard as already laid down by the statute.

The distinction between a mere *pledge*, which passes into the immediate possession of the lender as a security for his loan, whilst the property is still in the original owner, and a *mortgage*, which does not of necessity change the possession of the goods mortgaged, and where the property becomes absolute upon breach of condition, has long been familiar to our law, because it is founded in the very nature of contracts, and demanded by the convenience of trade.

[ *677 ]     *Again: experience shews that in assignments of goods by an insolvent trader, the insolvent himself is often the fittest man to wind up the business and dispose of the property for the benefit of his creditors, whilst with usual publicity of advertisements, &c. there is no risk of false credit or any other public injury.

Yet again : there are occasions in the mutations of human life, where family kindness or parental affection may be the sole and the laudable inducement for the leaving the seller or mortgagor in possession. All these transactions are subject to occasional abuse, and may be turned to purposes of fraud. The wise legislator would not, therefore, abolish mortgages of personal property, and insist on their being converted into pledges ; nor would he prohibit the employment of the trustworthy and honorable insolvent as the agent of his creditors to settle the estate he assigns to them ; nor would he prevent the relief and protection which the father or brother may thus afford to the less fortunate members of his family, unless such sweeping prohibitions were the only possible mode of protecting the community from deception and fraud. On the contrary, he would endeavor to shut out the abuses without breaking up the convenient usages of business and trade, and the common charities of life.

Can this be done better than by establishing the presumption of illegality, and requiring the integrity of such transactions to be positively proved ? Experience has shown that juries are most commonly inclined in such cases to suspect actual fraud. The natural and proper prejudices of men are against the person having the use or apparent control of property which his creditors cannot reach. When in addition to this, the law directs courts and juries to presume actual fraud in such cases, and makes that presumption " conclusive," unless the perfect integrity of the transaction can be proved to the satisfaction of every juror, then you have guards provided against collusion far stronger than have been deemed necessary, as yet, to exclude similar fraud from other transactions of daily life, such as lending, hiring, &c. which are equally liable to be used for *obtaining false credit. I cannot, therefore, imagine a better   [ *678 ] mode of conciliating these conflicting interests of society, than that which the literal exposition of our own statute affords.

But the supreme court has further maintained that the statute does not give the decision of such questions to the jury as questions of fact ; but that the section of the revised statutes enacting that every question of fraudulent intent, arising under the provision of the chapter " of fraudulent conveyances of real and personal property," shall, be deemed a question of fact and not of law, refers only to the sections (*sec.* 1, *title*, 1, *and sec.* 1, *title* 3. *of chap.* 7, *part* 2, declaring void all conveyances of lands and goods made to defraud and hinder creditors. *Blackman* v. *Bond*, 19 *Wendell*, 445. Yet I know not how it is possible to define or explain the words " question of fraudulent intent,'' so as to include the question whether the fraudulent intent charged was or was not made out by proof, and yet to exclude the question, whether, when such fraudulent intent is not charged but presumed, as an inference from other facts, it can or cannot " be made to appear that the transaction was in good faith and without any intent to defraud." In the one case, fraudulent intent is to be proved di-

rectly.   That is conceded to be declared by the statute to be a question of
fact.   In the other case, good faith is to be proved and fraudulent intent is
to be disproved.   Is not this also a similar " question of fraudulent intent ?"
I cannot draw the distinction.   All these questions, whether arising upon
conveyances of land made with intent to defraud prior or subsequent pur-
chasers, 1 *R. S.* 134, § 1 ; or upon conveyances or assignments of lands,
goods, or things in action, made with the intent to defraud or delay credit-
ors, 2 *R. S.* 137, § 1 ; or finally upon the section immediately under con-
sideration, appear to me to be equally " questions of fraudulent intent aris-
ing under the provisions of that chapter," and, therefore, be equally ques-
tions of fact, for the decision of the jury.

Then there remains to be considered the sort of evidence proper to go to
the jury, and required by the statute.   The statute expressly
[ *679 ]   requires that " it shall be made to appear *that the transaction
was in good faith."   It is clear then that the jury would not be
authorized to find against the conclusive presumption of the law, upon evi-
dence of character alone, nor upon the mere acknowledgment of a valuable
consideration contained in the instrument of sale or mortgage.   The statute
positively requires that good faith shall " be made to appear."   Now the ex-
istence of good or justifiable motives, as well as the absence of bad ones, can
only be shewn from facts.   There must be proof of valuable consideration
for sales or mortgages, otherwise they would not be sales or mortgages as
they assume to be, but would be voluntary conveyances unaccompanied by
delivery.

But since in cases of change of title unaccompanied by change of posses-
sion, the sale or mortgage is to be presumed fraudulent until fraudulent in-
tent is repelled, the mere acknowledgment of a consideration in the bill of
sale or the mortgage, cannot be deemed sufficient, but the actual considera-
tion should be proved.

A valuable and adequate consideration, when satisfactorily proved, affords
a strong indication of good faith, but still this alone may not be inconsistent
with the possible existence of a collusive design to impose upon others.   As
it is to be made manifest that there was no such design, there should be evi-
dence of some fact inconsistent with that intent.  It was long ago noted by
Lord Coke, in his report of Twyne's case, that publicity is a fact of that na-
ture, and one of the precautions that he advises to repel presumption of fraud,
is that the transaction be done in public, " and not in private, for secrecy is
a mark of fraud."   Such publicity is given in commercial assignments by
advertisements, notices, &c. ; but our statute has specially required in the
case of chattel mortgages unaccompanied by possession, the specific notice of
a copy of the instrument being filed annually with the town clerk or city re-
gister ; which legal notice is made essential to its validity, excepting only as
against persons having received actual notice.  Moreover, as the obligation of

disproving the bad intent rests upon the claimant, under the sale
or mortgage, there can be no more satisfactory *mode of disprov-      [ *680 ]
ing bad motives, than by proving such facts as indicate the exist-
ence of other motives, innocent at least, or even laudable.   Amongst these
are reasons of family kindness, influencing a father or a brother ; reasons of
prudence in business ; or, in short, any such reasons as ordinarily influence
the conduct of honest men.

There are again other cases, where the impossibility or extreme inconveni-
ence of immediate removal of the property, would go to disprove fraudulent
intent, not as a legal excuse to the court, but as giving very strong evidence
of absence of fraudulent intent to a jury.   It would be useless, and indeed
presumptuous, to attempt to anticipate and enumerate all the sorts of evidence
necessary or proper, to rebut the statutory presumption of fraud.   These
must vary, according to the various and complicated circumstances of the
cases which may occur.   But whenever evidence is offered satisfactory to the
common understanding of men, that there was no intent to defraud, but that
the transaction was in good faith, and this, not as a matter of charitable con-
struction of motives, but of reasonable and direct proof of honest intent,
then, in my judgment, there is presented a question which the jury have a
right to decide, and which the court has no right to take from them.

In the present case, evidence was given to rebut the presumption of fraud-
ulent design, arising from the mortgaged printing press, printing materials
and furniture being left in the mortgagor's possession, and subject to his use
by shewing that the mortgage was made for a full and valuable consideration,
being meant as a security for debt contracted in the ordinary course of busi-
ness of both mortgagor and mortgagee, for the press and for printing materi-
als supplied to the mortgagor, a printer, by the plaintiffs who are manufactu-
rers of such articles—that the mortgage was duly filed in the register's
office, and that the sheriff at the time of the levy, had received notice that
the property on which he levied was so mortgaged—that the mort-
gagor, as a printer, required the use of the property to enable him to carry
on his business—that if the property had been sold at any time
*between the date of the mortgage and that of the execution, it      [ *681 ]
would not have brought over twenty per cent of its value—and
finally, by the testimony of the plaintiff's bookkeeper, that his employers
did not sell the property when the mortgage became forfeited by non-pay-
ment, " because by so doing, they knew they should have to sustain a heavy
loss, and they thought that by sustaining Mr. Bell until times were better,
they could get all their money, and Bell's other creditors would stand a
chance of being paid."   Here, then, was evidence, which if believed, would
not only have refuted the presumption of any fraudulent intent as to other
creditors or purchasers, but would prove the motives of the transaction to
be those of benevolent and conscientious, as well as prudent men of business,

who, whilst they looked to their own security with justifiable caution, were not so selfish as to sacrifice the interests of their customer and his other creditors. Whether this was to be believed or not, was a question of fact for the jury to decide, and if, in their judgment, this evidence of fact, motives and intent was true, then the statutory requirement would be fulfilled, and it would be made to appear on the part of those claiming under the mortgage, that the same was made in good faith, and without any intent to defraud creditors or purchasers.

The judgment of the courts below should be reversed.

The CHANCELLOR was understood by the reporter to hold the nonsuit right for the reasons assigned in the two propositions combatted by Senator VER-PLANCK, in the opening of the opinion delivered by him.

Senator WAGER, after hearing the chancellor, observed that he had made up his mind to vote for a reversal of the judgment, until he heard the opinion delivered by the chancellor ; that he was now satisfied that the *levy* was rightfully made, and that the action ought not to be sustained.

[ *682 ] Senator MAYNARD observed, that he thought the difficulty suggested by the chancellor did not exist, and that the *court might decide the main question. The interest of the mortgagor was forfeited long before the levy—whereby the mortgagee had obtained the right to reduce the property to actual possession, and the mortgagor had no right or interest left in it, which was the subject of .levy ; and as to the *filing* of the mortgage two days after its execution, it was a question which they ought not to consider. The court ought not to determine the case upon questions not agitated at the trial.

Senator EDWARDS, before reading the opinion delivered by him, said that he thought the main question was properly before the court. The supreme court so considered the case, and made their decision accordingly.

Senator TALLMADGE said, that the decision of the judge at the trial was expressly upon the point that the mortgage was invalid, for the want of being accompanied by possession of the property mortgaged ; to that decision an *exception* was taken, and the question arising upon a bill of exceptions, none other can legitimately be entertained by this court.

Senator DICKINSON concurred with other senators in opinion, that the questions raised by the chancellor should not influence the decision of this case. On the merits, he said that he had no doubt that the mortgage was valid, and that the legislature, when they passed the statute requiring mortgages of personal property to be filed in a public office, considered them, though unaccompanied by possession of the property mortgaged, valid, if shewn to have been made in good faith, and without intent to defraud—or why require the mortgage to be filed ?

Albany, December, 1840.—Smith v. Acker.

Senator PAIGE fully concurred in the views of the chancellor.    The plain-
tiffs were properly nonsuited, because the sheriff was bound to levy upon
the redemptionary interest of the mortgagor.

Senator DIXON also concurred in the views of the chancellor, and ex-
pressed his opinion that the judgment of the supreme court ought to be af-
firmed.

*Senator FURMAN said, it does not appear that the sheriff lev-    [ *683 ]
ied *only* upon the redemptionary interest of the mortgagor.    Be-
sides, the *bill of exceptions* presents but one question, viz. that arising upon the
decision at the trial as to the effect of the mortgage, being unaccompanied by
possession of the property mortgaged, and none other can be considered.
On the merits, he was of opinion that the supreme court had erred in their
construction of the statute.

The PRESIDENT of the senate observed, that in the case of *Stoddard* v.
*Butler*, he had voted for an affirmance because he was of opinion that the
legal presumption of fraud, arising from continuance of possession, was not
rebutted by the evidence in the case.    Here there was evidence of good
faith and pure intentions, which should have been submitted to the jury.    He
therefore was of opinion that the judgment of the supreme court ought to be
reversed.

On the question being put, *Shall this judgment be reversed?* the mem-
bers of the court divided as follows:

*In the affirmative:* The PRESIDENT of the Senate, and *Senators* CLARK,
EDWARDS, ELY, FURMAN, HAWKINS, HOPKINS, HULL, HUMPHREY, HUNT,
LEE, H. A. LIVINGSTON, MAYNARD, MOSELEY, NICHOLAS, PECK, ROOT,
TALLMADGE, VAN DYCK, VERPLANCK, WORKS—21

*In the negative:* The CHANCELLOR, and *Senators*, DIXON, PAIGE, WA-
GER—4.

Whereupon the judgment of the supreme court was REVERSED.