By the Court, Bronson, J.
This case may be summed up in a few words. Haines, being insolvent, sold his whole stock of goods to an infant, who Avas his clerk and brother-in-laAV; took void notes for the price, and ran away. The transaction was without any thing like a decent show of honesty and fair dealing. It was an unmitigated fraud upon creditors. The fact *435 that Curtis & Merriam consented to the arrangement cannot help the matter. If they were willing to take the chance of being cheated themselves, they could not prejudice the rights of other creditors. It is difficult to believe what Haines says on the subject. According to his account of the matter, Curtis & Merriam were creditors to the amount of three thousand dollars, and one of them came from Boston to get payment or security for their debt. Then, instead of taking the goods, they preferred to take the notes of an infant who had nothing but Maine lands; and who, whatever he had, could avoid the notes at pleasure. They knew the plaintiff was an infant, and yet preferred his notes to the goods. The thing is incredible. But if we assume it all to be true, it will not help the case. Curtis & Merriam were not purchasers; they only consented that the plaintiff should purchase. That may conclude them from alleging fraud; but it does not conclude other creditors. If they had agreed to the sale, and taken the plaintiff’s notes in satisfaction of their debt, they would then, in effect, have been purchasers ; and other creditors would have no right to complain. But their debt was not discharged. They only agreed to apply the money when the notes were paid. In other xvords, they agreed to accept the money if it ever came. Their consent to such a transaction does not make it valid as against others. It only proxres that they were parties to the fraud. And yet the jury must have been misled by this evidence. They probably supposed that the consent of one creditor to the sale would save the transaction from the taint of fraud as to other creditors. Upon any other supposition it is impossible to see how twelve intelligent and right minded men could have found such a verdict The finding was clearly wrong, and the circuit judge has very properly ordered a new trial.
But it is said that since the recent decisions of the court of errors in relation to fraudulent mortgages, we can no longer grant a new trial in this class of cases on the ground that the verdict is against evidence: that fraud or no fraud is a question of fact for the jury, and their finding is conclusive. We do not so understand the matter. The court of errors has gone very far *436 towards saying, that in every possible case the question of fraud must be submitted to the jury: but they have neither taken away our jurisdiction, nor absolved us from the duty of granting a new trial when the verdict is against evidence; and we must do so in this class of cases as well as in others. It is true that the late Mr. Justice Coweh thought the court of errors had gone far enough to make the finding of the jury conclusive upon the question of fraud. (Butler v. Van Wyck, 1 Hill, 438; Prentiss v. Slack, id. 467; Fuller v. Acker, id. 473.) : But this was before it was fully known how much the court of errors had decided, and where it intended to stop. It will .be seen from the later cases in that court that our right and duty to grant a new trial where the jury fall into error on a question of fraud is not denied. Indeed, it could not be questioned. The principal change which the law has undergone consists in this: the judge at the circuit cannot now, as he formerly, did in a plain case, take upon himself to decide the question of fraud. However clear and conclusive the evidence of fraud may be, it must be left as a (question of fact to the jury. In other respects the law remains as it was before. If the jury come to a wrong conclusion, we must, as We do in other cases, grant a new trial. The road to justice may be longer, and consequently more expensive than it was before; but it ends at the same place.
As this is the first occasion I have - recently had to speak of conveyances to defraud creditors, it may be proper to make one or two remarks which are suggested by the case in error of Hanford v. Artcher, (4 Hill, 271.) When my opinion in Butler v. Van Wyck, (1 Hill, 438,) was prepared—and, indeed, when it was delivered—the decision of the court of errors in Smith & Hoe v. Acker, (23 Wend. 653,) had not been published by the reporter. I had before me a newspaper copy of the opinion of Senator Hopkins, and had understood that it was the only opinion upon which the court proceeded in reversing our judgment. It was therefore mentioned as the “ prevailing opinion.” It turns out, however, that in addition to some conversation among the members of the court; there was an opinion on thé feame side by Senator Edwards; ánd a third by- Senator Ter *437 planck has been published, though, as I have been informed, it was not delivered in court.(a) The mistake in supposing that Senator Hopkins delivered the prevailing opinion is one of little consequence, and I should not have taken the trouble to notice it, if he had not appeared anxious to have it understood that the decision did not turn exclusively upon his reasoning.
Another remark is suggested by the report of the case of Hanford v. Artcher, (4 Hill, 271,) which contains what purports to be an opinion delivered in the court of errors by the late lieutenant governor. Having been present when the case was decided, I am able to say that no such opinion, nor any formal opinion whatever, was delivered by the lieutenant governor in the court of errors. After opinions had been read by the chancellor and Senator Hopkins, the lieutenant governor spoke, apparently without notes, some three or four minutes, within which time he advanced some of the sentiments contained in the first two or three pages of his published opinion. Of the remaining nine-tenths of the opinion not a single sentence was uttered in the court of errors. When it was prepared I am unable to say; but it was first given to the public long after the case was decided, and after the author had ceased to occupy on official station. It is an extra-judicial performance which does not properly belong to the report of the case, and which does not, therefore, call for any further remark. Had it been an official paper, I might have thought proper to give it some further notice, particularly by way of inviting attention to the fairness with which the. author has made the quotations and statements on which his censorious remarks are based.
The circuit judge was right in setting aside the verdict, and his decision must be confirmed.
New trial granted.(b)

a) See the observations of Walworth, chancellor, in Butler v. Van Wyck, (4 Hill, 275.)

 See Goodrich v. Downs, (post, p. 438.)