By the Court,

Bronson, J.
The mortgage was fraudulent and void as
against the creditors of Burdick; and the defendant by virtue of the execution had a better title to the property than the plaintiff. To say nothing of other facts disclosed in the case, Burdick continued to possess and use the property as his own. He says the reason why he kept the property was, that he wished to use it. This is like the reason assigned in Gardner v. Adams (12 Wendell, 297,) where the mortgagor retained possession of the goods for his accommodation. Such reasons may be given in every case [56] where a man wishes to put his property beyond the reach of creditors while he still continues in the enjoyment of it as though no sale had been made. The distinction, which was formerly recognized to some extent, between absolute sales and mortgages of personal property, no longer exists. The statute has placed both upon the same footing; and every conveyance of personal chattels in the possession or under the control of the vendor, whether absolute or conditional, is presumed to be fraudulent and void against creditors and subsequent purchasers, unless the conveyance is accompanied by an immediate delivery of the goods, and followed by an actual and continued change of possession. This presumption becomes conclusive evidence of fraud, unless the person claiming under the conveyance proves that it was made in good faith, and without any intent to defraud creditors or purchasers (2 R. S. 136, §5.) The mere absence of any direct evidence of an intent to defraud creditors, in connection with proof of a valuable consideration will not be sufficient to take the case out of the statute (Collins v. Brush, 9 Wendell, 198; 12 id. 297; Doane v. Eddy, 16 Wendell, 523.) There must be some good and sufficient reason, such as the law will approve, for leaving the property in the possession of the vendor. Time may be necessary to remove ponderous articles, growing crops and the like; but where the property is of such a nature that there may be an immediate change of possession, that change must be made, or the law will pronounco the transaction fraudulent as against creditors and subsequent purchasers. It is idle to say that the vendor needed the use of the property, and was therefore left in the enjoyment of it. That is but the common case where men wish to place their property beyond the reach of creditors. When the possession is not changed, the burden of proving fraud does not lie on the creditor or subsequent purchaser, nor are courts or juries to speculate upon the probabilities of good faith in a given case; the transaction is fraudulent in law—the sentence is written in the statute book, and neither courts nor juries are at liberty to disobey the mandate. Whatever opinion may [57] be entertained by others, I think this a most salutary doctrine; one that is founded in the wisest principles of public policy. Like othei general rules, it may sometimes operate with’severity; but the hardship or inconvenience in a particular case, is not to be compared with the advantages which must result from having one uniform rule of decision, and that rule of such a character as will effectually protect the community against frauds of this description. Had it been declared fifty years ago, that if a man con-Veyed his personal chattels and still kept them himself, under any pretenc *35 whatever, the transaction should be deemed absolutely fraudulent and void as against creditors and purchasers, it would have saved an incalculable amount of time and money which has been expended in the litigation of questions of this kind; and it would, moreover, have rendered a most important service to the cause of good morals, by removing all temptation to the numberless frauds which have been committed for the purpose of placing property beyond the reach of legal process. Although our statute does not go quite so far as the rule I have suggested, it is nevertheless broad enough to admonish every man that if he take a conveyance of goods, he must take the possession also, or he will be in danger of losing his right. He must not enable the vendor to act as owner of the property, and then claim a preference over those who may have been deceived by this false appearance.
But there are other objections to the verdict. In the late revision of the laws, the action of the detinue was abolished (2 R. S. 553, § 15), and the remedy by replevin was extended, so as to include cases of the wrongful detention, as well as the wrongful taking of chattels (id. 522, § 1). But the distinction between taking and detaining must be kept up in the writ and declaration; and the plea differs both in its language and consequences in the two cases (§ 6, 36, 39, 40). In this case, the plaintiff counts on an unlawful taking. The execution was levied on the 27th May, 1833, eleven days before the mortgage money, without any reference to the extension of the time of payment, fell due. Conceding that the mortgage [58] was valid, Burdick then had an interest in the goods, which was not only liable to seizure, but to sale on the execution (10 Wendell, 318, and, cases by the court). The defendant has done nothing subsequent to that time, beyond refusing to relinquish the levy and give up the property. He has not taken it, nor done any other act beyond a denial of the plaintiff’s right, and putting in a claim of property before the sheriff. I think the plaintiff should not have counted on the taking, but should have complained of the detention of the property. This objection was made on a motion for a nonsuit.
It was also insisted that the suit was brought before the cause of action arose. The defendant levied on the property in May, when he had a perfect right to do so. No action would lie for that taking, lie did not remove the property, but left it in the possession of Burdick. He did nothing from that time down to the moment when the writ of replevin was served, and the plaintiff could only make out a detention by proving that he refused to relinquish the levy and give up the property. From the testimony of Wright, who served the writ of replevin, it is highly probable, to say the least, that the action was commenced before the defendant was required to relinquish the levy. The witness was sent for to serve the writ; he went, and received the writ either at the plaintiff’s office or at the stable, he can not tell which. The defendant either joined them on the way or met them at the stable; and there the defendant claimed the property. If this question had been submitted to the jury, they would have been warranted in finding that the action was brought too soon.
The point of the issue under the defendant’s special plea of justification was, whether the plaintiff before the commencement of the suit had dem nded payment of the money, from Burdick, or had given him notice that he wanted the same. The burden of the issue lay on the plaintiff. He had attempted to prove a demand early in August, but his witness, Burdick, had given different accounts of the matter. The jury were not instructed to say whether such a demand had been satisfactorily proved; but were [59] directed to consider whether the plaintiff went to Burdick, in whose possession the horses continued, and there met the defendant, and the plaintiff demanded the horses by virtue of the mortgage, and the defendant claimed *36 them by virtue of the execution. There was no evidence that the plaintiff demanded either the horses or the money at the time the parties met at the stable. The true question, as will sometimes happen in the hurry of trials at nisi prius, seems to have been lost sight of. Had it been left to the jury to pass upon the issue, and say whether the indefinite extension of credit for the mortgage money had been terminated by a demand of payment from Burdick before this suit was brought, it is far from being clear that they would have given a verdict for the plaintiff.
New trial granted.