Spies v. Boyd.

FREDERICK A. SPIES and others *v.* THOMAS I. BOYD and another.

Where a debtor mortgaged the contents of his store and dwelling house, "and also such personal property as should hereafter be in the said premises, or which might be *substituted* in place of such articles as might be sold in the course of his business;" it was *held*, that the mortgage was, upon its face, void against creditors, as creating a trust for the use of the mortgagor, in violation of the statute.

The validity of a mortgage, containing such a provision, is a question of law. The fraudulent intent, in such a case, is a legal inference from the instrument itself, and is not a matter to be submitted to the jury.

The whole instrument is vitiated by the illegal trust, and conveys no title, as against creditors, even to the property actually specified and described in the mortgage, and which was upon the premises at the time of its execution.

The case will not be altered by the fact that the mortgagee took possession, after a judgment creditor has acquired a lien by delivering an execution to the sheriff, and after the sheriff has levied upon the property.

THIS was an appeal by the defendants, from a judgment for $500, entered against them, under the direction of a single judge at special term, upon the verdict of a jury. The questions determined at the general term, arose upon the denial, by the presiding judge at the trial, of a motion for nonsuit, and upon exceptions to his charge. The facts are fully set forth in the opinion.

*Charles T. Porter*, for the defendants.

*George S. Stitt*, for the plaintiffs.

BY THE COURT. DALY, J.—The plaintiffs brought this action to recover the value of the stock and fixtures of a drug store, taken upon an execution under a judgment obtained by the defendants, against one Neumeister. The plaintiffs claimed the property by virtue of a mortgage executed by Neumeister to one Moring, and which had been assigned by Moring to the plaintiffs. The mortgage was executed by Neumeister, on the 20th of November, 1849, and was given to secure the payment of a promissory note made by

Neumeister, for $2,200, bearing even date with the mortgage, and payable to the order of Moring, six months after date. The mortgage was duly filed on the 16th of January, 1850, and was assigned to the plaintiffs before the promissory note became due on the 20th of March, 1850. And on the 25th of April, 1850, Neumeister endorsed a consent on the back of the mortgage, by which he agreed that the plaintiffs might take immediate possession of the mortgaged property, the same as if it were then due and the conditions forfeited, and sell and dispose of it to the best profit they could obtain, rendering, after the payment of the sum secured by the mortgage, the overplus, if any, to Neumeister. In which endorsement Neumeister declares that the consent is given in view of his inability to pay the note, and to prevent a sacrifice of the property. On the same day, the plaintiffs executed a power of attorney to Geo. S. Stitt, to take possession of the property as their agent and attorney, and dispose of it according to the terms of the mortgage. By virtue of which authority, Stitt, on the same day, directed one Jones to take possession of the store and contents, who went there for that purpose, the sheriff having previously levied, though the property was not taken by him until the following day.

The mortgage, after specifying, as the property conveyed, the goods, merchandize, medicines, preparations, apothecary apparatus, and machines of every kind, counters, shelves, weights, scales, fixtures and personal property, including the mortgagor's household furniture and effects then in the store and house, No. 166 Prince street, contains the following clause: " and also such personal property as may hereafter be in said premises, *or which may be substituted in place of such articles as may be sold in course of my business.*" Upon the trial, Neumeister was examined as a witness, and testified that he owed Moring over $750 for the purchase of the store; that Moring made advances to him up to the time when the note and mortgage were given; that the note and mortgage, though dated the 20th of November, 1849, (the latter purporting to have been executed upon that day,) were given in the middle of January,

1850; that on the 5th of December, 1849, he confessed a judgment to Moring, in the supreme court, intended to secure the same debt, which confession of judgment appears to have been entered up on the 16th of January following; and by the affidavit accompanying which, it purports to have been confessed upon the note before referred to, the original consideration of which is stated to have been money advanced by the plaintiff to the defendants, at various times and in various amounts, from the 20th day of September to the 20th of November, 1849. That he did not know how the note came to be $2,200; that he never gave Moring any other memorandum of indebtedness; that he knew that it was the amount loaned, and that it was all cash. He further testified, that when the mortgage was given, it was understood that he was to remain in possession of the property, and to continue his business buying and selling; that he did so continue it until he was sold out; that after the mortgage was given, he sold between $300 and $400 worth of goods out of the store, and bought goods with the money received; that he bought about $90 worth, and that the goods so bought went into the store. In another part of his examination, he said that $200 or $300 worth might have been bought, up to the time when the inventory was taken of the contents of the store in May.

Upon this state of facts, the plaintiffs rested, and the defendants moved for a nonsuit: *first*, upon the ground that the consent, endorsed by Neumeister upon the mortgage, converted it into a new instrument, and was void, not having been filed, as required by statute; and *secondly*, that the mortgage was void upon its face as against creditors, being a conveyance made in trust for the use of Neumeister. The motion was denied, and the judge instructed the jury generally, that if they found, from all the circumstances, that the mortgage was intended to hinder, delay or defraud creditors, or to *cover property by trust*, or otherwise, that the defendants were entitled to a verdict. The jury found for the plaintiffs.

Upon the first point it is unnecessary to bestow any consideration. But upon the second, I think the judge should have

nonsuited the plaintiff.   He appears to have thought that the existence or non-existence of a trust, created for the benefit of Neumeister, depended upon the *intent* with which the parties acted, wholly irrespective of the instrument, and that it was the province of the jury to pass upon the intent as a question of fact.   This, I think, was erroneous.

All conveyances of goods, chattels or things in action, *made in trust for the use of the person making the same,* are declared by the statute void as against creditors.   (2 R. S. 195, § 1, 3d ed.)   This is a distinct provision of the statute, wholly independent of the subsequent provision declaring all assignments or conveyances of goods and chattels fraudulent and void made with intent to hinder, delay, or defraud creditors, or the provision declaring every sale made by a vendor of goods and chattels in his possession, and every assignment of them by way of mortgage, security, or upon any condition whatever, not accompanied by an immediate delivery, and followed by an actual and continued change of possession, fraudulent and void as against creditors and subsequent purchasers, unless made in good faith and without any intent to defraud, &c. Under the two last provisions, the question of fraudulent intent, where there has been no delivery of the property nor change of possession, or where the motive imputed is to hinder, delay or defraud creditors, is undoubtedly a question of fact for the jury.   But when, from the terms of the contract itself, it appears that a trust has been created for the use and benefit of the person making the conveyance, and which is declared by the section referred to, to be void as against the creditor, there is no question of *intent* to be left to the jury. What the parties intended, is shown by their contract, and when the nature of that contract appears, the question, whether or not it is in violation of the statute, is purely a question of law.   That this is so, is not only apparent from the statute itself, but from all the cases that have been decided under it. Some confusion has arisen since the decision of *Smith* and *Hoe* v. *Acker*, (23 Wend. 653,) as to how far the aid of a jury is requisite now in determining questions of fraud under this

statute ; and it may be necessary to examine the decision in that case to show that it has never been held, either in that nor in any subsequent case, that the validity of a conveyance, as against creditors, which created a trust for the benefit of the person making it, was to be submitted to the jury upon the question of intent as a question of fact.

In *Smith and Hoe* v. *Acker*, the mortgage was given by Bell, the mortgagor, to Smith and Hoe, upon his printing presses, printing materials, and household furniture, to secure the sum of $10,000, which he owed them for the printing presses and materials, which was payable in a year from the date of the mortgage ; and it was stipulated that until default was made in the payment, Bell should remain in possession of the property, and in the full and free enjoyment of it. It had been held by the supreme court, in *Eddy* v. *Beekman*, 16 Wend. 529 ; *Randall* v. *Cook*, 17 Wend. 53 ; *Beekman* v. *Bond*, 19 Wend. 444; and in *White* v. *Cole*, 24 Wend. 121, that where there was no change of possession, the presumption created by the statute could only be removed by showing, that from the nature of the property or the situation of the parties, an immediate delivery or change of possession could not be made. " Where the property is of such a nature," said Bronson, J., in *Randall* v. *Cook*, " that there may be an immediate change of possession, that change must be made, or the law will pronounce the transaction fraudulent, as against creditors and subsequent purchasers." * * " Where the possession is not changed, courts and juries are not to speculate upon the probabilities of good faith, in any given case ; the transaction is fraudulent in law." And in *White* v. *Cole*, Justice Cowen, in stating the rule adopted and acted upon by the supreme court, where there had been no change of possession, said, " We have given one uniform answer to the question, whether the fraudulent intent was a question for the jury. We have withheld the question of *bona fides* from the jury, where the parties have refused to change the possession, if change were within their power." When the case, therefore, came on to be tried in this court, as there was nothing in the nature of the

property, or in the situation of the parties, to prevent an immediate delivery to the mortgagees, the judge, although he admitted evidence of the *bona fides* of the transaction, refused, under the rule of the supreme court, to submit the question of fraudulent intent upon the evidence to the jury, but nonsuited the plaintiff. This decision was affirmed by the supreme court, and reversed by the court of errors, and all that can be extracted from the decision of the latter court is, that though an immediate change of possession be practicable, the transaction is not necessarily fraudulent in law, but the party claiming the title to the property may give evidence to show *bona fides*, and upon the evidence so given, the question of the existence or the absence of a fraudulent intent becomes a question of fact, which must be submitted to the jury. Their finding, however, is not conclusive, but may be set aside, as upon any other question of fact, if clearly against the weight of testimony ; and in respect to the relevancy of the testimony to show *bona fides*, the court may exercise the same power in admitting or rejecting it, that they would do upon the trial of any other issue. (*Cole* v. *Thurman*, 26 Wend. 511 ; *Hanford* v. *Archer*, 4 Hill, 272 ; *Randell* v. *Parker*, 3 Sand. S. C. 69.) This is all that was determined in *Smith and Hoe* v. *Acker*, and it is apparent that that decision applies only to cases where the possession of the goods is intentionally suffered to remain in the debtor, or where the question of intent arises under the provision declaring every conveyance or payment void, made with intent to hinder, delay or defraud, &c. The validity of a conveyance, permitting the debtor to sell or dispose of the property conveyed, or of any part of it, for his own benefit, is, however, quite another question, which has not been touched or affected by that decision, nor in any of the subsequent decisions of the court of errors. On the contrary, it has been expressly held, since *Smith and Hoe* v. *Acker*, in *Goodrich* v. *Downs*, (6 Hill, 438,) that such a conveyance is absolutely void upon its face. Justice Bronson, in reciting the first section of the statute, says : " There is nothing here about the *intent* with which the deed is made, and neither court nor jury

has any thing to do with that question. Every one must see that a conveyance in trust, made for the use of the grantor, is in itself a fraud upon creditors, and the legislature, therefore, have declared the conveyance void, *without any qualifications whatever.*" The same doctrine was reiterated in the recent case of *Griswold* v. *Sheldon* (4 Comst. 581). The case was not decided upon that point, but upon the ground that the mortgage had not been filed in compliance with the statute. As the point was involved, however, it came under consideration; and though a conflict of opinion occurred between Bronson and Mullet, the only two justices who delivered opinions as to whether the mortgage in that case conferred upon the debtor the power to sell and dispose of the property, yet they both agreed that if it did, it would have been void. The case was made the occasion of a lengthened discussion as to the effect of the decision in *Smith and Hoe* v. *Acker*, and I confess, after a careful perusal of the opinion of Mullet, J., I do not perceive that there is any substantial difference between himself and Justice Bronson as to the rule that was adopted in that case; or that Justice Bronson, in any part of his opinion, announces the doctrine that his associate has devoted so many pages to refute. Justice Mullet says, that the principal ground upon which the invalidity of the mortgage was founded was, that it contained a stipulation permitting the mortgagor to retain possession of the property until default should be made in some one of the payments secured by it, and his opinion is devoted to a lengthened review of the authorities before and since the statute, to show that a provision, authorizing the mortgagor to retain possession of the property, did not render the mortgage fraudulent in law. There can be no doubt that this is now the settled law, and I understand Justice Bronson to concede it, but to say, that when the conveyance allows the debtor to traffic with the property and sell it as his own, the court of errors has never given the slightest countenance to such a transaction, or held that such a case must be left to a jury. The mortgage in *Griswold* v. *Sheldon*, contained a clause by which the debtor agreed to keep a good and full assort-

ment of goods in the store, and Justice Bronson thought there was sufficient upon the face of the instrument to show that it authorized the debtor to carry on his business, and to sell and dispose of the mortgaged property for his own benefit; that, in the language of the statute, it was a trust for the use and benefit of the mortgagor, and rendered the mortgage void as against creditors.   Justices Ruggles, Jewett and McCoun agreed with him, that it was a conveyance in trust for the use of the mortgagor, and void upon its face as against creditors. From this view Justice Mullet dissented, though he admitted, if it contained a provision "allowing the mortgagor to retain possession of the goods, and sell and dispose of them at his pleasure, it would not be a mortgage, nor create any lien upon the property as against subsequent purchasers, or perhaps creditors."   His dissent, therefore, was limited to a denial that the mortgage gave any such authority to the debtor; and what the remaining three justices of the court thought upon this point does not appear from the case, the reporter stating generally that they concurred with Justice Mullet upon the question of fraud.

Supposing it to be perfectly clear that the law is as I have stated it, then the only question in the present case is, whether the mortgage authorized Neumeister to carry on business with the mortgaged property, and dispose of it for his own profit and benefit; and of that I think there can be no doubt.   The mortgage contemplates that he shall do so, inasmuch as it was intended to cover property which might be *substituted* in the place of such articles as should be sold in the course of his business; and Neumeister testified that it was understood, when the mortgage was given, that he was to remain in possession of the property, and to continue his business, buying and selling, and that he did so continue it until he was sold out; and that during that time he sold from $300 to $400 worth of the goods, and bought about $90 worth.  I think, therefore, that the mortgage was void upon its face, and that the plaintiff should have been nonsuited.   The circumstance, that the plaintiff, through his agent, took possession of the

property, does not alter the aspect of the case. He took possession after the sheriff had levied. The deputy sheriff swore that he made the levy on the 23d of April, and by the testimony of Stitt, the plaintiff took possession upon the 25th. But, independent of this, the creditors required a lien upon the property immediately upon the execution being placed in the hands of the sheriff. It has been suggested, that though the trust was void, the mortgage would, nevertheless, be good in respect to the property intended to be conveyed by it. But all the books agree, that if any part of a deed be contrary to a statute, the whole instrument will be void. (*Goodrich* v. *Downs*, 6 Hill, 441, and the cases there cited.) A new trial must be granted.

Judgment reversed, and a new trial ordered, costs to abide the event.