HEMPSTEAD VS. JOHNSTON ET AL.

18   123
59   509
18   123
60    37

A deed of trust, if valid in other respects, vests the title to the property in the trustee for the benefit of all the *cestuis que trust*, or such of them as think proper to avail themselves of its provisions, though signed only by the grantor and trustee, and not by the beneficiaries:

The assent of the creditors provided for in a deed of trust will be presumed where the provisions of the deed are beneficial, and not prejudicial to their interests.

The provision in a deed of trust, that the property shall remain in the possession of the grantor until default of payment, is no evidence of fraud, if under all the circumstances the time fixed for payment and sale be not unreasonable—as where the deed was made in April, the time fixed for payment or sale the 1st January following, the property, in part, a negro man for whose services during the year a contract had been previously entered into with a third person.

Nor is it a badge of fraud that a deed of trust should provide for the payment to the grantor of any balance of the proceeds of the trust property that might remain after paying all the trust debts. The law would require the trustee to do so, without any provision in the deed. And creditors might file their bill to subject such excess to the payment of their debts.

Where a deed of trust is attacked for fraud, the party claiming under it makes a *prima facie* case, and puts the *onus probandi* on the attacking party, by producing the securities recited in the deed, without showing the considerations upon which they were based or executed.

A debtor in failing circumstances may by deed of trust prefer his own relations as well as other creditors; and although relationship between the debtor and *cestui que trus* may be a circumstance to awaken suspicion, it is not, of itself, evidence of fraud.

The acts of the parties subsequent to the execution of a trust deed cannot affect its validity.

Where one of the beneficiaries in a deed of trust purchases a part of the trust property at a fair and regular sale, and permits the grantor to remain in possession, by renting the property to him, it is not an indication of fraud.

Where a deposition contains facts competent and relevant to the issue, as well as incompetent matter, a motion to exclude the whole deposition, instead of the incompetent matter, should be overruled.

Where one of the notes secured by a trust deed was for the benefit of a witness, who swears that he has no interest in the result of the suit by the trustee for the trust property; that he had delivered the note to a third person who was security for the debt, who had given his own note for the amount, who was solvent and to whom alone he looked for payment—the witness is competent.

The production of the note secured by a deed of trust, without proof that it had been in the hands of the payee, made a *prima facie* case for the trustee in a chancery suit for the trust property, and the burthen of showing that the debt was fictitious or simulated devolved upon the defendant, who had averred, by way of avoiding the deed, that it was contrived to defraud creditors.

A defendant having averred in his answer, by way of avoiding a deed of trust, that it was made to hinder, delay and defraud creditors, and was therefore null and void, the *onus probandi* was upon him.

It is equally a rule in Courts of law and Courts of equity, that fraud is not to be presumed; but it must be established by proof.

A deed of trust, or other conveyance is not necessarily void because its effect is to hinder and delay creditors, unless it was a fraudulent contrivance for that purpose, and the grantee or person to be benefited by the conveyance was privy to the fraudulent design.

*Appeal from the Circuit Court of Union county in Chancery.*

The Hon. THOMAS HUBBARD, Circuit Judge.

Mr. HEMPSTEAD, the appellant.

Assignments in preference of creditors are tolerated, not favored by the law. To be valid they must devote the whole of the debtor's property to the immediate and unqualified payment of his debts, *pari passu*, or in a specified order, and must contain no reservations or conditions for the benefit of the grantor, and must also be free from provisions calculated to extort from the fears of creditors a compromise, discharge, or other favor *Burdick vs. Post*, 12 *Barb*. 175; *Barney vs. Griffin*, 2 *Comst*. 365; *Whitney vs. Krows*, 11 *Barb*. 200; *Webb vs. Daggett* 2 *Barb*. 11; *Nicholson vs. Leavitt*, 2 *Selden* 515.

If there is any trust or reservation for the benefit of the debtor, the deed is considered as fraudulent and void as to creditors. And therefore a right to retain possession of and use the trust property cannot be reserved. *Barney vs, Griffin*, 2 *Comst.* 214; *Galt vs. Debrell*, 10 *Yerg.* 146; *Garland vs. Rives*, 4 *Rand.* 282. In such a case the fraudulent intent appearing on the face of the deed it is *ipso facto* void: 11 *Wend.* 194; 8 *Barb.* 127, 128; 2 *Douglass Mich. R:p.* 180; 4 *Ala.* 374.

The stipulation to retain possession renders the deed fraudulent and void as to creditors, not embraced or not accepting it. *Mackie vs. Cairns*, 1 *Hopkins Ch. R.* 273: *S. C.* 5 *Cowen* 574; 14 *John.* 458; 2 *Vernon* 570; 7 *Paige* 163; 1 *Sandf. Ch. R.* 4, 256; 5 *J. C. R.* 329; 20 *J. R.* 442; 11 *Wend.* 187; 6 *Hill* 439; 9 *Iredell* 194; 7 *Gill* 446.

The case of *Murray vs. Riggs*, 15 *Johns.* 574, that an annual sum might be reserved to the debtor, has been repeatedly over-ruled. 6 *Hill* 439; 1 *Hill* 463; 11 *Wend.* 187; 20 *Johns.* 442; *Lockwood's Reversed Cases* 190.

It is not the extent of the reservation or benefit, but the fact that any is made at all, that renders a deed preferring creditors void. 11 *Wend.* 194; 8 *Barb.* 127, 128.

A deed of trust or assignment preferring creditors, and omitting some, is fraudulent and void as to those omitted, or not accepting it, if it is stipulated that the surplus is to be paid to the grantor. 2 *Comst.* 371; 6 *Hill* 438; 10 *Paige* 229, 230; 8 *Barb.* 126.

An assignment for the benefit of creditors void in part is void *in toto*. 14 *John.* 465; 20 *John.* 449;5 *Cowen* 580; 4 *Paige* 37.

The deed in this case was fraudulent and void, for matter appearing on the face of it, and by evidence and circumstances *aliunde*.

Marr for the appellees

Mr. Chief Justice English delivered the opinion of the Court.

This was a bill filed on the chancery side of the Union Circuit Court, on the 7th of October, 1852, by James H. Johnston,

of Union county, Martha A. Langster, late Sheppard, and her husband, William Langster, of Haywood county, Tennessee, R. Richards, Robt. W. Adams and John M. Lee, late partners under the style of R. W. Adams & Co., and Robt. W. McCalpin of New Orleans, against Samuel H. Hempstead and others.

The allegations of the bill are in substance as follows:

That on the 25th of March, 1847, Wm. D. Lee executed a promissory note to Archer Phillips, guardian of J. C. Marley, for $1,658 39, due one day after its date.

On the same day, he executed another note to said Phillips as guardian of M. H. Marley, for 1,280 32, due one day after date.

That the complainant Martha A. Langster, who was then Martha A. Sheppard and a *feme sole*, signed both of said notes as the security of Lee.

On the 8th of April 1852, and before that time, Lee was, and still is, indebted to complainant R. Richards, by note and account, in the sum of $280.

On and before the same day, he was indebted to complainants R. W. Adams & Co., in the sum of $140 by open account.

And to complainant McCalpin, by open account, in the sum of $120.

On the 8th of April, 1852, the said several debts remaining wholly unpaid, and the liability of complainant Martha A. Langster and her husband, as the security of Lee, still subsisting except as to the sum of about $800 previously paid by her and her husband on the said notes signed by her as the security of Lee; and Lee being then liable to refund that sum to them; and being desirous to secure the payment thereof, and to indemnify them against liability or loss for or on account of the said Martha A. having become his security on said notes, as also to secure the payment of the said several sums due as aforesaid to complainants R. Richards, R. W. Adams & Co. and Robert W. Mc-Calpin, made, executed and delivered his certain *deed of trust* by which he the said Lee, in consideration of the existence of the said several debts, and of the liability of said Martha A. and her husband as security for him as aforesaid, and of his de-

sire to indemnify them as aforesaid, and for the further consid-
eration of one dollar paid to him by complainant James H.
Johnston, granted, bargained, sold and conveyed to said Johns-
ton, his heirs and assigns, etc, a negro man slave named *Harry*,
about 28 years of age, two tracts of land situated in Union
county, containing about 50 acres, and two blocks of ground in
the town of El Dorado, which are described, etc.

*In trust nevertheless*, and upon the express agreement, by the
terms of the deed, that Johnston, the trustee, should permit Lee
to retain possession of the slave Harry, and the real estate, con-
veyed by the deed, until the 1st of January, 1853; and upon the
further trust, that if said debts, or either of them, or any part
thereof, should then remain unpaid, the trustee, upon receiving
notice in writing from any one of the creditors aforesaid, to
close the trust, should forthwith advertise the trust property for
sale to the highest bidder, for cash, at the Court-house door in
the town of El Dorado, by giving twenty days previous notice
of such sale, by written advertisements posted up at three pub-
lic places in the county of Union, etc.; and should appropriate
the proceeds of the sale to the payment of the several trust
debts; and if not sufficient to pay them all, to distribute the pro-
ceeds *pro rata* among the creditors; but if any balance should
remain in the hands of the trustee after discharging all the trust
debts, he should pay over such balance according to the order
and direction of said Wm. D. Lee.

That the deed, on the day of its execution, was duly acknow-
ledged by Lee, the grantor, and Johnston, the trustee, and on
the 10th of April, 1852, filed for registration in the Rocorder's
office of Union county, where the trust property was situated,
and duly recorded, etc.

A copy of the deed is exhibited, and its provisions are sub-
stantially as stated in the bill.

It is further alleged in the bill, that on the 9th of August,
1852, the marshal for the eastern district of Arkansas, by virtue
of a *fi. fa.* issued from the Circuit Court of the United States for
said district, in favor of Bernheimer, Eusteen & Co., against
said Wm. D. Lee and Minton Utley, levied on the slave *Harry*,

as the property of Lee, and advertised him to be sold at the Court-house door in El Dorado, on the 20th Sept., 1852. That Lee gave a delivery bond, and retained possession of the slave until the day of sale, when he delivered him to the marshal, who, under instructions from Samuel H. Hempstead, attorney for the plaintiffs in the execution, sold the slave, and *Quillin* purchased him for Hempstead at $200, and took possession of him. That Harry was worth about $1,500.

That Hempstead caused the slave to be purchased for himself with a full knowledge of the existence of the deed of trust, and of the rights of complainants thereunder, hoping to be able to defeat the deed, etc.

That since the execution of the deed, the debt of McCalpin had been paid; the debt due to R. W. Adams & Co., had all been paid but about $62; and $25 had been paid on the note to the guardian of J. C. Marley; and $75 on the note to the guardian of M. H. Marley, and that with the exception of these payments, all the debts and liabilities recited in the deed of trust, remained unpaid.

That Johnston, the trustee, attended the marshal's sale, publicly forbid the sale of the slave, exhibiting the deed of trust, and giving notice of the rights of complainants under it, etc.

That Hempstead would remove the slave beyond the jurisdiction of the Court: so that he could not be had when required for the purposes of the trust, unless restrained, etc.

Hempstead and Lee were made defendants, and the bill prayed that Hempstead, etc., might be enjoined from removing the slave, etc., that an account be taken of the trust debts, etc., and that the trust property be sold under a decree of the Court to satisfy the same, and for general relief.

Hempstead answered the bill substantially as follows:

That on the 12th April, 1852, Bernheimer, Eusteen & Co., of Pennsylvania, recovered a judgment against Wm. D. Lee and Minton Utley, of Union county, Arkansas, in the Circuit Court of the U. S. for the eastern district of Arkansas, for $696 39 damages, and $31 78 costs. The judgment was for balance due on a note executed by Lee and Utley to the plaintiffs, 10th

May, 1849, for $1,281 30, due at twelve months, and upon which they paid $700, on the 1st May, 1851.

On the 19th April, 1852, an execution issued upon the judgment, which was levied by the marshal on the slave *Harry*, as the property of Lee, on the 9th of August, and the slave was sold on the 20th September following, and purchased for respondent, by his agent Quillin, at $200. On the 11th of October, 1852, the marshal executed to respondent a bill of sale for *Harry*.

Respondent could not answer as to the actual value of the slave; thought it probable he was worth more than respondent gave for him; but he purchased him at a public sale fairly conducted, at which every one so disposed had an opportunity to bid; and if the slave did not bring his full value, it was owing to the conduct of complainants, or their agents, in casting a cloud on the title, by setting up, as respondent was informed and believed, a false and fraudulent claim thereto, under the trust deed, of which wrong they could take no advantage.

Respondent claims to be a *bona fide* purchaser of the slave for a valuable consideration. He admits that before the sale by the marshal, he had been informed that Lee had made a deed in which the slave was embraced, but was not advised of its precise nature or extent; and his informants stated to respondent that such deed was believed to be fraudulent and void, and made to defraud the creditors of said Lee; which respondent believed and charges to be true.

That the note on which the above judgment was obtained, was in the hands of respondent, as the attorney for Bernheimer, Eusteen & Co., long before suit was instituted, of which Lee was aware, and had received indulgence thereon; and respondent was informed, believed it to be time, and so charges, that the deed from Lee to Johnston mentioned in the bill, was designed and intended to defraud, hinder and delay the creditors of the said Lee, and especially the plaintiffs in said judgment. That the debts mentioned in the deed were merely pretended and simulated, and not *bona fide*. That the deed was made by Lee to place his property beyond the reach of the said judgment

and execution, and to prevent the plaintiffs therein from obtaining satisfaction of their debt; and also to reserve and obtain an advantage to himself thereby, and that the deed was fraudulent, null and void as against respondent as purchaser under said execution.

Respondent submits that the complainants had full and adequate remedy at law in respect of the matters complained of in the bill, and were not entitled to any relief in equity as against him; and claims the benefit of this defence as if upon demurrer, etc.

With the answer is exhibited a transcript of the record of the proceedings, judgment, execution and return in the case of *Bernheimer, Eusteen & Co. vs. Lee & Utley*, under which Hempstead purchased *Harry*, and also a copy of the marshal's bill of sale to him for the slave.

The case was heard at December term, 1854, on bill and exhibits, answer and exhibits, replication, depositions and agreement of counsel, and the Court decreed, that the deed of trust was not fraudulent and void as against the creditors, etc., of Lee, that the slave *Harry* be surrendered up to the trustee, and that Hempstead be perpetually enjoined from setting up title to the slave under his purchase, etc.

Hempstead appealed from the decree.

So much of the testimony as is deemed material will be stated in connection with the points discussed in the progress of this opinion.

" Every conveyance or assignment, etc., etc., made or contrived with the intent to hinder, delay or defraud creditors or other persons of their lawful actions, damages, forfeitures, debts or demands, as against creditors and purchasers prior and subsequent, shall be void." *Dig. ch.* 73, *sec.* 4.

" No such conveyance or charge shall be deemed void in favor of an innocent subsequent purchaser, if the deed or conveyance shall have been duly acknowledged or proven and recorded, or the purchaser have actual notice thereof at the time of his purchase, unless it shall appear that the grantee in such convey-

ance, or person to be benefited by such charge, was party or privy to the fraud intended." *Ib. sec.* 5.

The several grounds upon which the appellant insists that the deed in question was fraudulent and void, under the above Statute, will be taken up in the order in which he has presented and discussed them.

1. The first objection taken to the validity of the deed is, that the creditors for whose benefit it was made did not sign, nor assent to it.

The deed was signed by Lee, the grantor, and Johnston, the trustee: If valid in other respects, it vested the title to the property in the trustee for the benefit of all of the *cestui que trusts*, or such of them as thought proper to avail themselves of its provisions. It was not necessary for the creditors to sign the deed. In *Conway et al. Ex-parte*, 4 *Ark. R.* 360, Mr. Justice Lacy, delivering the opinion of a majority of this Court, said: " The law is that creditors are presumed to give their assent to the deed, as it is made for their benefit, unless they come in and specially object to it. Deeds of trust are often made for the benefit of persons who are absent, and even for persons not in being: whether they are for the payment of money, or for any other purpose, no expression of the assent of such person is necessary. And such trust is always held to be executed upon the principle that the deed is complete when the trustees take upon themselves its performance. It is not even necessary to the validity of such assignments that the creditors should be consulted. Creditors are always presumed to be willing to receive their debts from any hand that will pay them."

Substantially the same language was used by Ch. J. Marshall in *Brooks vs. Marbury*, 11 *Wheat.* 97. To the same effect are *Brashear vs. West et al.*, 7 *Peter's* 613. *Wiswall vs. Ross et al.*, 4 *Porter R.* 321. *Kinnard vs. Thompson*, 12 *Ala.* 487. *Mallory vs. Stodder*, 6 *Ib.* 806.

It seems, however, that the assent of the creditor will only be presumed in cases where the provisions of the deed are beneficial, and not prejudicial to his interest. *Mauldin vs. Armstead, Exr.* 14 *Ala.* 709. *Smith vs. Leavitts*, 10 *Ib.* 104. *Elmes*

*vs. Sutherland*, 7 *Ib.* 266.    *Lockhart vs. Wyatt*, 10 *Ib.* 234.
*Graham vs. Lockhart* 8, *Ib.* 9.    *Hodge vs. Wyatt*, 10 *Ib.* 271.

Mrs. Langster and her husband were the principal beneficiaries in the deed. She was the security of Lee on two notes, and the deed indemnifies her and husband against loss on that account. It was clearly for their benefit, and their assent to its provisions would be presumed, if not expressly shown. But it appears from the agreement made by counsel at the hearing, that immediately after the deed was executed, they were advised of its execution, and forthwith accepted the deed, and forwarded the two notes upon which Mrs. Langster was security to the trustee by letter.

It seems from the allegations of the bill, and the recitals in the deed, etc., that the claims of the other creditors were due when the deed was made (8th April, 1852;) and the time of payment was postponed until the first of January following. If Lee had not been in failing circumstances at the time the deed was executed, inasmuch as if put off the payment of these debts for a period of about eight months, perhaps the deed could not have been regarded as beneficial to them, nor their assent to its provisions presumed, in the absence of affirmative acts conducing to establish such assent.

But the proof shows that Lee was in failing circumstances when the deed was made. The time fixed for the payment of the debts, and sale of the property on default, was perhaps not unreasonably remote. The answer to the bill does not put in issue directly the assent of the creditors to the deed, but avers that the debts recited in the deed were feigned and not real. When the slave was offered for sale by the marshal, the trustee interposed on behalf of the creditors, and after the sale they filed their bill to enforce the provisions of the deed. Upon all the facts of the case, we think the assent of the beneficiaries sufficiently shown.

2. The second objection to the validity of the deed is that it does not appear that Johnston, the trustee, was solvent, or a proper person in other respects to be a trustee.

This objection, like the one just disposed of, is made in the argument here, and not in the answer to the bill. The solvency of Johnston, or his fitness to become a trustee, was not questioned by the answer, nor was it made to appear by any proof in the cause, that he was insolvent, or unfit to act as trustee.

3. It is next insisted that the deed was absolutely void because it provided upon its face that Lee might retain the possession of the trust property until the first of January, 1853, the time limited for the payment of the debts.

Several facts agreed upon by the counsel, must be considered in connection with this provision of the deed.

It seems that from the fall of 1847, until the year 1851, Lee and Utley were engaged as partners in merchandising at El Dorado, and did a very considerable business. In the last named year, they dissolved, and Utley turned over to Lee the whole of the partnership effects. Utley was insolvent.

At the time the deed in question was made, Lee was in failing circumstances, and suits were pending against him and Utley. About the same time, he made two other deeds of trust, upon his individual property. By one of which, he secured the payment of all his individual debts, which were not embraced in the deed now before us; and by the other, he secured two of the creditors of Lee & Utley, of Philadelphia, who had not sued upon their claims, nor been paid any part of them. The property conveyed by these deeds was under the control of the creditors secured thereby.

All of the goods and chattels of the firm of Lee & Utley, were duly levied upon, and sold at judicial sales.

Before the execution of the deed in question, Lee had made a contract with one Wallar, by which he had engaged to him the services of the boy *Harry*, as a striker in a smith-shop, carried on by Lee & Wallar, during the year 1852, etc.

A debtor in failing circumstances, by assignment of his estate in trust, made in good faith, may prefer one creditor to another, when no bankrupt or other law prohibits such preference, and no legal lien, binding on the property assigned, exists. This is a well settled principle in the English and American law, and

admitted by numerous authorities. 2 *Kent's Com.* 532, *and cases cited in note b. at page* 701, 8*th edition.*

It was held in *Twyne's case* 3 *Coke R.* 80, that where a vendor made an absolute sale of chattels, for a valuable consideration, to a creditor, but continued in possession, and exercised acts of ownership over the goods, it was fraudulent and void as against other creditors within the Statute of 13th Elizabeth.

This is a leading case on the subject of the effect of the vendor continuing in possession after an absolute sale of goods. It has been followed by numerous cases both in the Courts of England, and of our own country. But a controversy has prevailed in the decisions, as to whether the vendor retaining possession in such case, is to be considered as only a badge or evidence of fraud to be submitted to the jury, under the direction of the Court, and subject to be rebutted by counter testimony, or whether it is to be regarded as such a circumstance *per se*, as makes the transaction fraudulent in law. The decisions on this subject are collected in 1 *Smith's Leading cases, by Hare & Wallace, p.* 1 *to* 74. 2 *Kent's Com.* 515 *to* 536, *and notes,* 8*th Ed.* 1 *Parsons on Cont.* 442 *note* (*v*). *Land vs. Jeffries,* 5 *Rand.* 268, and opinion of JUDGE CABELL in same case, in *appendix.*

This Court has adopted the rule that possession by the vendor subsequent to the sale does not amount to fraud *per se*, but is merely *prima facie* evidence of fraud, subject to be explained. *Field vs. Simco,* 2 *Eng.* 275. *Danley vs. Rector,* 5 *Ib.* 224.

But this rule does not apply to mortgages and deeds of trust, where the grantor, by the terms of the deed, is permitted to retain possession of the property until default of payment, because in such transfers, the possession is consistent with the deed, and furnishes no evidence of fraud. The deed being upon the public records, no one need be deceived as to the title of the property, by its remaining in the possession of the grantor. 1 *Smith's Leading Cases, by Hare & Wallace, p.* 1 *to* 74. 2 *Kent's Com.* 515, *et seqr.* *Hundley vs. Buckner,* 6 *Sm. & Marsh.* 77. *Forbes vs. Parker,* 16 *Pick.* 460. *Glass vs. Batton,* 6 *Rand.* 78. *Land vs. Jeffries.* 5 *Ib.* 268. *United States vs. Hooe et al.,* 3 *Cranch R.* 89. *Meek et al. vs. Wilson,* 1 *Gallison R.* 422. *Thorn-*

ton vs. Davenport et al., 1 Scam. 298. Powers vs. Green, 14 Ill. R. 389. Magee vs. Carpenter, 4 Ala. 474. Johnson vs. Cunningham, 1 Ib. 258. Conard vs. Atlantic Ins. Co., 1 Peters 449. Phetteplace vs. Styles, 4 Mason 321. Hundley vs. Webb, 3 J. J. Marsh. 653. Head, Hobbs et al. vs. Ward et al., 1 Ib. 280. Ash vs. Savage, 5 New Hamp. 545, 6 Ala. 356. 8 Ib. 694 7 Yerg. 440. Merrill vs. Dawson et al. Hempstead's C. C. R. 603.

The same doctrine was to some extent recognized in New York, until the adoption of the Revised Statutes, by which absolute sales and mortgages are put upon the same footing. Randall vs. Cook, 17 Wend. 53. Several of the cases relied on by appellant are founded upon this Statute, and have no application in this State, there being no such Statute here.

But there are cases in which it has been held that the provision in the deed, that the grantor should retain the possession and use of the property until default of payment, was fraudulent. (1 Smith's Leading Cases, 11). As where the nature of the property was such that it would be necessarily consumed in its use. Darwin vs. Hundley, 3 Yerger 503. Elmes vs. Sutherland, 7 Ala. 267 Robbins vs. Parker, 3 Metcalf·119. Summerville vs. Horton, 4 Yerger 541. Shutleff vs. Willard, 19 Pick. 212. Green et al. vs. Wade et al., 3 Humph. 547.

So where the deed postpones the day of payment for an unreasonable length of time after the maturity of the debts secured by it, and provides that the grantor shall retain the possession and use of the property until default of payment, a fraudulent intent to cover up the property for the use of the grantor, and hinder and delay creditors may be inferred. Hafner vs. Irwin, 1 Iredell L. Rep. 496. Hardy vs. Skinner, 9 Ib. 191. Cannon vs. Peebles, 2 Ib. 453. Mitchell vs· Beal, 8 Yerg. 134. 5 Humph. 612–618.

But it would seem from these authorities, that if the time fixed for payment and sale, etc., upon default, be reasonable, under all the circumstances, fraud is not to be inferred. See Mitchell vs. Beal, 8 Yerger 134, Bennett vs. Union Bank, 5 Humph. R. 612.

. In the case at bar, the deed was made 8th of April: the debts

were then due, and the debtor was allowed until the first of January following to pay them. It does not appear that the value of the property embraced in the deed exceeded the amount of the debts secured thereby. Lee had been engaged in a considerable mercantile business, selling, perhaps, on credit, in an agricultural district, where the annual products of the soil, realized about the close of the year, are the principal resources for meeting debts: and it is not unreasonable to infer that these considerations furnished some inducement for the stipulation in the deed fixing the 1st of January, as the time for the payment of the debts. Moreover, it seems that before the execution of the deed, Lee had made a contract with Wallar, by which he had engaged the services of the boy *Harry* during the year.

Upon all the facts of the case, we do not feel warranted to declare that the provision in the deed fixing the first of January as the time for the payment of the debts, and allowing Lee to hold possession of the property until default, was unreasonable and a badge of fraud.

4. It is insisted that the provision in the deed, that any balance of the proceeds of the trust property that might remain after paying all the debts, should be paid over according to the order and direction of Lee, is a badge of fraud.

But in the absence of any such provision in the deed, the law would make it the duty of the trustee to return to Lee, or pay over to his order, any surplus that might remain after paying the trust debts. And if there was really an excess of property embraced in the deed, over and above what was necessary to secure the payment of the trust debts, any judgment creditor of Lee, not otherwise provided for, could have filed a bill to subject such excess to the payment of his debt. *Austin vs. Jones*, 7 *Yerger* 191. *Johnson vs. Cunningham*, 1 *Ala. R.* 249. *Graham vs. Lockhart*, 8 *Ib.* 9. *Hindman vs. Dill*, 11 *Ib.* 689. *Burgin vs. Burgin*, 1 *Ired. Law R.* 458. *Moore vs. Collins*, 3 *Dev.* 146. *Wright vs. Henderson*, 7 *How. Miss. R.* 539.

5. The answer avers that the debts recited in the deed were merely simulated, and not real. In support of this allegation, the appellant seems to have produced no evidence whatever,

but relies on any defect there may be in the proof of the appellees to sustain the fairness of the deed by showing the debts to be genuine.

It has been held that where the deed is attacked for fraud, the party claiming under it makes a *prima facie* case, and puts the *onus probandi* on the attacking party, by producing the securities recited in the deed, as judgments, bonds, bills, notes, etc., without showing the considerations upon which they were based or executed. *Firmerster vs. McRoie*, 12 *Iredell Law R.* 289. *Hundley vs. Buckner*, 6 *Sm. & Marsh.* 77.

At the hearing in this case, the complainants produced in evidence the two notes executed by Lee to Phillips, as guardian of the Marleys, recited in the deed. Also, a note executed by Lee to R. Richards, for $225 02, bearing date 15th Oct. 1849, and due one day after date.

As to these debts, the production of these securities, in connection with the recitals of the deed, made a *prima facie* case for the complainants in support of the deed.

No proof seems to have been made as to the accounts recited in the deed as being due from Lee to McCalpin and R. W. Adams & Co. The bill alleges that after the execution of the deed, the whole of the claim due to the former, and all but $62 of the debt due to the latter, had been paid by Lee.

If it be assumed, by reason of the failure of proof to establish the genuineness of these accounts, that they were simulated, the deed of trust would nevertheless be valid as to the other beneficiaries, unless it had been shown that they were privy to the insertion of the simulated claims for fraudulent purposes. And there is no proof that they had any knowledge of the matter. *Anderson vs. Hooks*, 9 *Ala. R.* 704. *Tatum vs. Hunter*, 14 *Ib.* 557.

6. The proof shows that Mrs. Langster was the sister of Lee, and that the wards of Phillips, the two Marleys, were nephew and niece to Lee; and the notes to Phillips, upon which Mrs. Langster was security, being the principal debts secured by the deed, it is insisted that the making of the deed in favor of the near relatives of Lee was a badge of fraud.

It has been held that the relationship between the parties, though a circumstance to awaken suspicion, seeing fraudulent conveyances are most usually made to kindred, is, of itself, no evidence of fraud. *Bumpas et al. vs. Dotson et al.*, 7 *Humph. R.* 317.

But any suspicion that may attach to the transaction in this case, by reason of the relationship of the parties, is removed by the proof in the cause. It appears that while Lee resided in Tennessee, and before he moved to Arkansas, he was the guardian of the Marleys; that Phillips succeeded him in the guardianship, and Lee executed to him the two notes recited in the deed, with Mrs. Langster (then Sheppard) as security, for balances due from Lee to his wards, on settlement; and that Mrs. Langster had made several payments on these notes. He certainly was under high moral and legal obligations to secure the payment of these debts, and to save his sister harmless in the premises. Being in failing circumstances, it seems that he secured the payment of all his individual debts, and a portion of the partnership debts of Lee & Utley, by several deeds upon his individual property, and surrendered the partnership effects to be sold under executions. We have seen that the law allowed him to prefer creditors, if he did it in good faith, and we do not know of any rule of law which compels a debtor to violate his natural instincts, and secure others, from the wreck of his sinking fortune, in preference to his relations, where he is honestly indebted to them, and more especially minors and females.

7. It appears from the agreement of counsel, that on the 25th of May, 1853, and after the bill was filed, the trustee, in pursuance of the provisions of the trust deed, made a public sale of the real estate embraced therein, and it was purchased for Langster by his attorney, at $365. Lee's residence was upon a portion of this property, and the agent of Langster had permitted him to continue in possession thereof after the sale, upon an agreement for rent, for which Lee gave his notes.

The appellant insists that Langster being the brother-in-law of Lee, the permitting him to continue in possession of the resi-

dence after the trust sale, etc., was an indication that the transaction was fraudulent.

If this were true, being a matter occurring subsequent to the execution of the trust deed, it could not affect its validity.

Moreover, if the trustee executed a deed to Langster for the lots, and it was put upon the public records, where the community generally look for evidences of title to real property, no one could be deceived as to the ownership of the lots by Lee's possession of them. The rule that the grantor remaining in possession after an absolute sale of personal property is a badge of fraud, does not apply with the same force to real estate, because creditors and purchasers look to the public records rather than the possession to ascertain who is the real owner of such property. *Phettiplace vs. Sayles*, 4 *Mason* 312. It does not appear that there was any thing unfair or irregular in the trust sale, and Langster's agent could as well rent to Lee as any other person.

8. It appears from a bill of exceptions taken by the appellant, that at the hearing, he moved to exclude and suppress the depositions of Isaac M. Steel and J. C. Marley, offerred on behalf of the appellees, but the Court overruled the motion. The particular objections taken to these depositions do not appear in the bill of exceptions, but are stated in the argument here.

To the deposition of Steel it is objected that it contains incompetent matter, which is perhaps true; but it also contains facts which are competent and relevant to the issue, and the motion to exclude extending to the whole deposition, was properly overruled by the Court.

In making up our judgment, however, upon the whole record, we have disregarded, as we must presume the Court below did, such portions of Steel's deposition, as are deemed incompetent.

The objection to Marley's deposition is, that he was incompetent by reason of interest in the result of the suit, one of the notes to Phillips, secured by the trust deed, being for his benefit. The witness swears that he has no interest in the result of the suit. That after he was of age, Lee's note was turned over to him by Phillips. That on the marriage of his sister, Phillips

turned over to her husband the other note, and witness purchased it of him.   At the request of Langster witness delivered both notes to him to be sent to Arkansas for collection, Mrs. Langster being security thereon.   After this, on the 7th July, 1853, Langster gave witness his note for the balance due on both notes ($1,531 22,) Mrs. Langster having made several payments upon them.   That Langster was good for the debt, and witness looked to him alone for payment.   If this statement be true, and there is no showing to the contrary, the witness was competent.   If it may be supposed that this arrangement was made for the purpose of removing the interest of the witness in the trust deed, in order that his deposition might be taken, it would go to his credibility, and not to his competency.

9. It is also insisted by the appellant, that the Court below erred in permitting the appellees to read in evidence the note of Lee to R. Richards heretofore referred to—that it does not appear ever to have been in the possession of the payee, and might have been drawn up by Lee for the occasion.

The note is dated at New Orleans where, it appears, Richards resided.   The signature of Lee was admitted to be genuine.   The note was produced at the hearing, and offered in evidence by the solicitor of the appellees.   This surely made a *prima facie* case for them, and the burthen of showing that it was fictitious or simulated, devolved upon the appellant, who had affirmatively averred in his answer, by way of avoiding the deed, that it was contrived to defraud the creditors of Lee.

10. It is also insisted by the appellant that the proof shows that payments had been made on the two notes to Phillips, which were not mentioned in the trust deed, and thereby the deed bore the false face of having been made to secure a larger amount than was really due.   But it also appears that these payments were made by Mrs. Langster, and that the deed was executed for the double purpose of securing the balance due on the notes, and of indemnifying her and her husband against loss in the premises.   The whole of the two notes was really due from Lee, and was properly made a charge upon the property.   At the time the deed was executed, it appears that the

notes were in Tennessee, where, also, Mrs. Langster, the security, resided, and it is not shown that Lee knew at that time the full amount of the sums which had been paid by her upon the notes.

11. In determining the issue involved in this case, we have kept in view several general principles of law, which it may be well to mention.

(*a.*) The appellant having averred in his answer, by way of avoiding the relief sought by the bill, that the deed of trust was made to hinder, delay and defraud the creditors of Lee, and was therefore null and void, the *onus probandi* was upon him.

(*b.*) It is equally a rule in Courts of law and Courts of equity, that fraud is not to be presumed: but it must be established by proofs. Circumstances of mere suspicion, leading to no certain results, will not, in either of these Courts, be deemed a sufficient ground to establish fraud. On the other hand, neither of these Courts insists upon positive and express proofs of fraud; but each deduces them from circumstances affording strong presumptions. But Courts of equity will act upon circumstances, as presumptions of fraud, where Courts of law would not deem them satisfactory. In other words, Courts of equity will grant relief upon the ground of fraud, established by presumptive evidence, which evidence, Courts of law would not always deem sufficient proof to justify a verdict at law. 1 *Story's Eq. sec.* 190. *Dardenne vs. Hardwick,* 4 *Eng. R.* 485.

(*c.*) A deed of trust, or other conveyance, is not necessarily void because its effect is to hinder and delay the creditors of the grantor in the collection of their claims. But such must be its object. It must be a fraudulent contrivance for that purpose; and the grantee, or person to be benefited by the conveyance, must be party privy to the fraudulent design.

The above propositions are sustained by the authorities to which we have referred in the progress of this opinion.

There are some features in this case which often present themselves in fraudulent conveyances. Lee was in failing circumstances when the deed of trust was made; suits were pending against him; and some of the beneficiaries were his near

relatives. But all these facts may, and do exist in many cases, consistently with the hypothesis that the conveyance was made in good faith to secure preferred creditors, whose demands are just.

Upon all the facts of this case, as presented in the record before us, we cannot conclude that the appellant has sustained the affirmative allegation of his answer, that the deed was a contrivance to hinder, delay and defraud creditors, etc., and was therefore void.

The decree of the Court below is affirmed.

Absent, Hon. T. B. HANLY.